Burke, J.
Over 100 ferryboat officers, all duly appointed to their respective job titles pursuant to the State Civil Service Law and employed on ferries operated by the Department of Marine and Aviation of the City of New York, instituted this article 78 proceeding to review a determination of that municipal agency which found that they were in violation of section 108 of the Civil Service Law (the Condon-W adlin Act) and which imposed certain penalties in accordance with Condon-W adlin.[1] After the proceeding was transferred from the Supreme Court, New York County, to the Appellate Division, First Department, the determination of the Commissioner was confirmed without opinion (25 A D 2d 818 [1966]).
In our opinion there was more than substantial evidence to support the findings of the hearing officer, adopted by the Commissioner, that between May 4,1965 and June 8,1965 petitioners were indeed engaged in a “strike” as that term is defined in subdivision 1 of section 108 of the Civil Service Law. We further conclude that the sanctions imposed by the Commissioner, such as loss of pay, loss of previously accrued vacation pay, demotion in title and part-time re-employment, were authorized by or permissible under the statute and were imposed in compliance with the necessary procedures (notice and hearing) required by Condon-Wadlin.
Petitioners claim that Condon-W adlin is unconstitutional on its face because it constitutes a bill of attainder, imposes excessive fines and inflicts cruel and unusual punishment. None of these allegations is sustainable. In Pruzan v. Board of Educ. (9 N Y 2d 911 [1961]) the constitutionality of Condon-Wadlin was at least impliedly asserted. Moreover, it cannot reasonably be said that the law constitutes a bill of attainder, “ a legislative act which inflicts punishment without a judicial trial.” (Cummings v. Missouri, 4 Wall. [71 U. S.] 277, 323 [1866].) There is no constitutional provision which vests one with the right to governmental employment, or which bars the imposition of reasonable and necessary limitations and conditions on such employment. Consequently, a statute which incorporates such limitations on governmental employment cannot be construed *288 as a bill of attainder. There is numerous authority to the effect that it is against public policy for public employees to strike, and many courts have held that such a strike is unlawful, illegal and may be restrained and enjoined. (See, for example, Norwalk Teachers’ Assn. v. Board of Educ., 138 Conn. 269 [1951]; Detroit v. Division 26 of Amalgamated Assn., 332 Mich. 237 [1952], app. dsmd. 344 U. S. 805 [1952]; Cleveland v. Division 268 of Amalgamated Assn., 41 Ohio Op. 236 [Ohio Comm. Pleas., 1949]; New York City Tr. Auth. v. Loos, 2 Misc 2d 733 [Sup. Ct., 1956], affd. 3 A D 2d 740 [1st Dept., 1957]; Matter of Weinstein v. New York City Tr. Auth., 49 Misc 2d 170 [Sup. Ct., 1966]; Blaikie v. Lindsay, 49 Misc 2d 612 [Sup. Ct., 1966]; see also Matter of Donaldson v. Brown, 24 A D 2d 714 [1st Dept., 1965].)
In the Detroit case we are treated to a full-blown analysis of the background and purpose of such statutes barring strikes by public employees (see 332 Mich. 237, 245-253), and the Michigan Supreme Court ruled that their Hutchinson Act, similar to Condon-W adlin, was clearly constitutional since there was no common-law right to strike on behalf of public employees, since the law did not constitute a bill of attainder, and since the statute only imposed reasonable limitations and restrictions on the privilege of public employment.
Relevant hereto is the Federal counterpart of our State law (U. S. Code, tit. 5, §§ 118p and 118r [now U. S. Code, tit. 5, § 7311; U. S. Code, tit. 18, § 1918]). In light of all the criticism caused by the procrastination of our Legislature in alleviating the harsh penalties contained in the Condon-Wadlin Act,[2] it is interesting to note the severity of the Federal statutes. Section 7311 contains an absolute bar from any further employment of the striking employee by the Federal Glovernment, contrary to our State law which expressly provides for re-employment under certain conditions (§ 108, subd. 5). Furthermore, under the Federal system the penalties for this unlawful conduct are criminal in nature (U. S. Code, tit. 18, § 1918). While such severe prohibition may seem unduly harsh, its constitutionality is apparently not disputed, (See Amell v. United States, 384 U. S. 158 [1966]; Tennessee Val. Auth. v. Local Union No. 110, 233 F. Supp. 997 [W. D. Ky., 1962].)
*289 In view of the plethora of authority to this effect (with none to the contrary), it cannot reasonably be said that Condon-Wadlin is unconstitutional on its face, as a bill of attainder or otherwise.
This brings us, however, to petitioners’ final two contentions that, even if the statute be considered valid, as applied it deprives them of equal protection of the law contrary to the equal protection clause of the Federal Constitution, first as a matter of law, and second as a matter of fact, warranting at least a hearing where ‘ ‘ invidious discrimination ’ ’ in the application of the statute to petitioners can be proven.
Petitioners’ unequal protection argument stems from the United States Supreme Court decision in Yick Wo v. Hopkins (118 U. S. 356 [1886]) where it was alleged that a regulatory ordinance, valid on its face, was unconstitutional as applied to the petitioner in violation of the equal protection clause of the Constitution. As is well known, the court in that case held that by unequal application of a statute the municipal government could not do indirectly what it was forbidden to do directly, and that the ordinance regulating laundries was applied in a discriminatory fashion against the Chinese solely because of their race and nationality. (118 U. S., supra, pp. 373-374.)
It is averred that under Yick Wo the petitioners have shown (or can show) ‘‘ illegal discrimination” in the application of Condon-W adlin to them by the Department of Marine and Aviation, or more generally by the City of New York. It is within the realm of common knowledge that the ‘ ‘ automatic ’ ’ penalty provisions of Condon-W adlin have never been enforced (with but two exceptions) over an almost 20-year period, in which the strikes by public employees have been too numerous to recall or record in this opinion (a random list would include strikes by transit workers, firemen, sanitation employees, teachers, ferry workers on other occasions, social workers, practical nurses, city-employed lifeguards, doctors and public health nurses, etc.). With this factual background, stipulated to by the respondent, petitioners claim that, prima facie, they have illustrated purposeful discrimination in the application of Condon-Wadlin to them, based upon their relatively small size and insignificant bargaining power, coupled with a favoritism *290 by the Department of Marine and Aviation for Local 333 (the representative of all the ferry workers). We cannot agree.
Tick Wo has been interpreted and applied in many instances by both the Supreme Court and other courts, and the test to be used in determining whether there exists a violation of the equal protection clause of the Constitution has been refined to the point of clarity and preciseness.
cl The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.' This may appear on the face of the action taken with respect to a particular class or person * * * or it may only be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself * * * But a discriminatory purpose is not presumed * * * there must be a showing of ‘ clear and intentional discrimination ’ * * * ” (Snowden v. Hughes, 321 U. S. 1, 8 [1944]; citations omitted.) “ The prohibition of the Equal Protection Clause goes no further than the invidious discrimination.” (Williamson v. Lee Opt. Co., 348 U. S. 483, 489 [1955].)
And one need prove more than mere nonenforcement as against other violators:
“ [T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged.” (Oyler v. Boles, 368 U. S. 448, 456 [1962].) (See, also, Ah Sin v. Wittman, 198 U. S. 500 [1905]; Mackay Tel. Co. v. City of Little Rock, 250 U. S. 94, 100 [1919]; cf. Niemotko v. Maryland, 340 U. S. 268 [1951]; Cox v. Louisiana, 379 U. S. 536, 557 [1965].)
Similarly, State and lower Federal courts have uniformly recognized that the doctrine of Tick Wo reaches only intentional or purposeful discrimination. (See Comment, The Bight *291 to Nondis criminatory Enforcement of State Penal Laws, 61 Col, L. Rev. 1103, 1113-1114 n. 48 [1961].) This is the test applied in New York, and it has been strictly interpreted. (People v. Friedman, 302 N. Y. 75 [1950], app. dsmd. 341 U. S. 907 [1951]; People v. Utica Daw’s Drug Co., 16 A D 2d 12 [4th Dept., 1962]; People v. Paine Drug Co., 22 A D 2d 156 [4th Dept., 1964], affd. 16 N Y 2d 503 [1965], cert. den. 382 U. S. 838 [1965]; cf. People v. Waller, 14 N Y 2d 901 [1964].)
“Arbitrary and intentionally unfair discrimination” — ‘ ‘ clear and intentional discrimination ” — “ invidious discrimination.” Petitioner must meet the “ heavy burden ” of proof required to sustain such an allegation (People v. Utica Daw’s Drug Co., supra), and it cannot be said, as a matter of law, that they have either met or failed to meet this burden.
What petitioners have illustrated from the stipulation as to nonenforcement is mere nonenforcement of the statute against others similarly situated. Something more must be proven. It must be shown that the provisions of Condon-Wadlin were enforced as against petitioners (and not enforced as to others over the 20-year period) pursuant to an intentional and invidious plan of discrimination by the Department of Marine and Aviation or by the City of New York. As the Supreme Court stated in Ah Sin v. Wittman (supra): “ No latitude of intention should be indulged in a case like this. There should be certainty to every intent. * * * This is a matter of proof, and no fact should be omitted to make it out completely ”. (198 U. S., supra, p. 508.) Petitioners have had no forum at which they could attempt to factually demonstrate such intentional and purposeful discrimination. And there are many factual issues requiring such a hearing: the actual motivation of the department (to comply with the law, or perhaps to favor one union over another, etc.); the actual responsibility for the decision to apply Condon-Wadlin (does it reside in each department as an entity or rather in the city-wide administration—see Boynton v. Fox West Coast Theatres Corp., 60 F. 2d 851, 854 [10th Cir., 1932]); the reasons for lack of enforcement against others similarly situated (mere strength of bargaining power or reasonable selectivity properly motivated), etc.
In his report to the department the hearing oEcer expressly disclaimed any consideration of the constitutional issues, prop *292 erly concluding that such questions were not within the province of his inquiry and must be submitted to a judicial tribunal. The Appellate Division confirmed the Commissioner’s determination and dismissed the petition without affording petitioners an opportunity to factually prove in a court of law the “ unjust and illegal discrimination” alleged. Such an opportunity is required to properly determine the scope of petitioners’ constitutional rights and any violation thereof. (People v. Walker, 14 N Y 2d 901 [1964], supra.)
Accordingly, the confirmance order of the Appellate Division should be reversed, without costs, and the case remitted to that court for further proceedings in accordance with this opinion.
Chief Judge Fuld and Judges Van Voorhis, Schleppi, Bergan and Keating concur; Breitel, J., taking no part.
Order reversed, etc.

. Civil Service Law, § 108 (the Condon-Wadlin Act), is repealed, eff. Sept. 1, 1967, to be replaced by Civil Service Law, art. 14, § 200 et seq., enacted by the Legislature on April 1,1967.

. But see n. 1, supra.