The CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., Columbia County Chapter of the Civil Service Employees Association, Inc., Geneva Unit of the Ontario County Chapter, Civil Service Employees Association, Inc., County Employees Unit, Orange County Chapter of the Civil Service Employees Association, Inc., Dutchess County Employees' Unit of the Dutchess County Chapter of the Civil Service Employees Association, Inc., Plaintiffs,

v.

Robert D. HELSBY, Joseph R. Crowley, and Ida Klause, as members of the New York State Public Employment Relations Board, Defendants.

No. 77 Civ. 4478 (GLG).

United States District Court,
S. D. New York.

Nov. 11, 1977.

Roemer & Featherstonhaugh, Albany, N.Y., for plaintiffs; Stephen J. Wiley, Albany, N.Y., of counsel.

Louis J. Lefkowitz, Atty. Gen., State of New York, New York City, by Eileen Frances Shapiro, Asst. Atty. Gen., New York City, for defendants.

## MEMORANDUM OPINION

GOETTEL, District Judge.

Plaintiff is a statewide association representing public employees in the State of New York. It brings this motion for a preliminary injunction on behalf of four local chapters of the state association under 42 U.S.C. § 1983. Defendants are members of the New York Public Employment Relations Board ("PERB"), which is charged with enforcing New York's Taylor Law prohibiting strikes by public employees and providing sanctions for violations of its provisions. Plaintiffs assert that one of the statutory sanctions, the suspension of a union's privilege to have dues payments from members "checked off" from their paychecks, is unconstitutional because its application discriminates between unions under the jurisdiction of the state PERB and unions operating under local government jurisdictions.

Three of the four local chapters who are plaintiffs are operating under privilege suspensions imposed by the PERB. The fourth claims that a suspension of its dues check-off privilege is imminent.[1] Plaintiffs' challenge is supported primarily be a recent decision by Judge Frankel of this court, *Buffalo Teachers Federation, Inc. v. Helsby*, 435 F.Supp. 1098 (S.D.N.Y.1977), which

---

1. The locals in Columbia County, Orange County and Dutchess County have received suspension orders from the PERB. The first two of these suspensions have commenced and are to last for one year each. The third suspension is on appeal before the Appellate Division and has not yet commenced. The Geneva County Unit has not been finally penalized, but the PERB hearing officer has recommended that such a penalty be imposed.

held this particular aspect of the Taylor Law to be a violation of the Equal Protection Clause. Plaintiffs informally requested defendants to remove their suspensions until decision of the pending appeal of Judge Frankel's ruling, but defendants refused. Defendants now argue that the full factual picture was not adequately presented to the court in *Buffalo Teachers*, and that, as a result, Judge Frankel's decision was based on incorrect factual findings. For the reasons stated below, this Court agrees that defendants' presentation in the prior case was strikingly deficient, and, indeed, the New York PERB's understanding of the statutory scheme at issue here is questionable. Based on a more complete presentation of the facts than afforded Judge Frankel, this Court finds no likelihood that plaintiffs will prove a constitutional violation and denies the instant motion for a preliminary injunction.

## New York's Taylor Law

The Taylor Law, Article 14 of the New York Civil Service Law, §§ 200–14 (McKinney 1973), governs public employees in the state. The statute recognizes the right of public employees to organize and to bargain collectively, and it creates the PERB to "assist in resolving disputes between public employees and public employers." *Id.* § 200(d); *see id.* § 205. The PERB is given the power to resolve disputes concerning the representation status of employee organizations, to conduct studies of public employees' problems, to establish panels of mediators to assist in dispute resolution, and to supervise generally the relations between the employees and their governmental employers. *Id.* § 205. Section 208.1(b) of the Act grants to certified or recognized employee organizations the right to have membership dues regularly deducted from their members' paychecks.

The regulatory core of the act is Section 210.1, which prohibits strikes by public employees. Section 211 gives the chief officer of the specific governmental employer involved the power to apply to the Supreme Court for injunctive relief to prevent any strike or work stoppage in violation of Section 210.1. Section 211 requires further application to the state court for an order of criminal contempt under the Judiciary Law if the injunction is disobeyed. In Section 210.3(f), the Act also gives the PERB the power to suspend the dues check-off privileges of any employee organization which it determines, after administrative hearing, to have violated Section 210.1.

Section 212 allows for an alternative to this statewide scheme of administrative supervision and enforcement. Section 212.1 permits local governmental employers to create their own administrative boards to implement the Taylor Law in their jurisdictions. These local boards are known colloquially as "mini-PERBs," and thirteen local jurisdictions have taken advantage of their power to establish such local administrative machinery.[2] The mini-PERBs are patterned after the state PERBs structure, as Section 212 requires any local government creating a mini-PERB to adopt procedures and provisions "substantially equivalent" to those used on the state level. The section therefore permits the creation of a mini-PERB only after the state PERB has made a finding that the proposed provisions of the locality comport with this substantial equivalency standard.

Section 212.2 provides specifically for New York City and, although it too requires substantial equivalency, it does not require submission of the city's local provisions for prior PERB approval. It does permit the New York City provisions to be invalidated, however, by the PERB suing for a declaratory judgment finding that city procedures are not substantially equivalent to those in the state statute.

---

2. Based on material submitted to the Court by defendants, it appears that the following local governmental bodies have established mini-PERBs: Nassau County, Westchester County, Tomkins County, City School District of Syracuse, Village of Valley Stream, Town of Hempstead, City of Syracuse, Town of Oyster Bay, Suffolk County, Onondaga County, Town of Rye, Delaware County and the Town of North Castle. Subsequent citations to the local laws are drawn from defendants' submissions.

Plaintiffs' constitutional challenge arises out of the mechanisms by which the suspension of check-off privileges is enforced. For employee organizations under the jurisdiction of the PERB, the suspension is imposed after an administrative hearing conducted by the PERB. For organizations in those jurisdictions that have established mini-PERBS, the sanction can be imposed by the mini-PERB, through a similar administrative procedure, or by a court which finds the organization in contempt under Judiciary Law §§ 750–52 (McKinney 1975). Section 751.2 provides in part:

"Where an employee organization . . . wilfully disobeys a lawful mandate of a court of record, or wilfully offers resistance to such lawful mandate, in a case involving or growing out of a strike in violation of . . . the civil service law, the punishment for each day that such contempt persists may be by a fine fixed in the discretion of the court. In the case of a government exempt from certain provisions of article fourteen of the civil service law, pursuant to section two hundred twelve of such law [mini-PERB governments,] the court may, as an additional punishment for such contempt, order forfeiture of the rights granted pursuant to the provisions of paragraph (b) of subdivision one of section two hundred eight of such law [the right to dues check-off privileges] . . ."

Thus, if a contempt proceeding is initiated by a particular local governmental employer, the employer may request the court to impose a check-off suspension, and the court has the discretion to do so. This procedure is different from that followed by the PERB, which must proceed adminis-

tratively to impose the penalty on an employee organization found to have violated the Act.

The record before Judge Frankel in the *Buffalo Teachers* case indicated that this contempt mechanism was the *only* way in which an organization under the jurisdiction of a mini-PERB could be punished with a dues check-off suspension.[3] Indeed, the state PERB itself, in a footnote to a recent decision, stated that such organizations

"may have their dues deduction privileges suspended only by a court, and then only as punishment for contempt of the court's order. Eighteen strikes by such employee organizations have occurred since the advent of the Taylor Law, and in no case has there been any suspension . . . ."

*In re United Federation of Teachers, Local 2*, 9 PERB ¶ 3071, at 3129 n. 2 (1976).

■ The record before this Court, however, evidences that this statement is simply incorrect, not only in its conclusion about the law, but also in its historical statistical summary. Under the substantial equivalency standard, all mini-PERBs are required by the PERB to have the capability to impose the suspension sanction through an administrative proceeding like that used by the PERB. The mini-PERBs, like the state PERB, are directed to institute suspension proceedings when it appears that a violation of the Act has occurred. *See* N.Y.Civ.Serv.Law § 210.3(b)– (f). The record before Judge Frankel was therefore erroneous. The mini-PERBs are not required to go to court to impose the suspension penalty; rather, they have the same power as the PERB to conduct administrative hearings and impose the sanction through that vehicle.[4]

---

3. See 435 F.Supp. at 1100–01:

"Employee organizations which have violated the no-strike requirement are disciplined in one of two ways, depending on whether or not they operate within the jurisdiction of a local governmental unit which has assumed responsibility for labor relations with its employees . . . .

The authority to withdraw the dues check-off privilege from [a mini-PERB] organization is

vested in the first instance in the State courts."

4. The local provisions establishing mini-PERBs are patterned after § 210.3(b)–(f) of the Taylor Law. *See, e. g.*, Town of Oyster Bay, local law no. 6, Public Employees' Fair Employment Law, § 11.3 (1967); Westchester Act No. 84– 1967, § 10(c), as amended, Act No. 1–1968.

The only exception to this capability of the mini-PERBs is in the case when a contempt proceeding has already been instituted by the local government executive. In that situation, the mini-PERB is permitted by the state PERB to provide, under its local regulation, that it will limit itself to proceeding for the suspension only in court. In other words, the PERB will accept as substantially equivalent local provisions which restrict mini-PERBs from proceeding administratively when a contempt proceeding has terminated on the merits. See PERB, *A Guide to the Preparation of Local Enactments Pursuant to Section 212 of the Civil Service Law* 11–12 (rev. 1968). Of the thirteen local government bodies that have created mini-PERBs, four have chosen to so restrict themselves.[5] The remaining nine have provisions identical in all material respects to the state provisions governing the PERB. In further contravention of the PERB's footnote set out *supra*, it appears from the record presented to this Court, that in at least three instances, local unions have had their dues privileges suspended by mini-PERBs acting by administrative proceeding.[6]

The provisions in Section 212.2 of the Taylor Law relating to New York City are different from both those governing the PERB and mini-PERBs. The city is the only locality that is not required to seek prior PERB approval of its Taylor Law enactments, although even New York City's provisions are required to be substantially equivalent to the state scheme. The city's Office of Collective Bargaining, unlike the PERB or mini-PERBs, is a tripartite panel composed of union members, government representatives and civilian members. The Board does not have the power to suspend the check-off privileges of a city public employee organization, but must rely on a court to do so in the contempt proceeding authorized by Section 751 of the Judiciary Law. See New York City Administrative Code, ch. 54, §§ 1173–1.0 to −13.0 (1975). Section 212.2 of the Taylor Law authorizes the New York City provisions to remain in effect until the PERB brings a declaratory judgment action in state court to invalidate them. Only a court may do this, after finding that the city procedures are not substantially equivalent to the state statutory scheme.

Before Judge Frankel the civil service union argued, on an inaccurate factual basis, that the Taylor Law unconstitutionally discriminated against employee organizations under the PERB's jurisdiction, since the suspension penalty could be imposed against them administratively, while a suspension against a mini-PERB union could be granted only in the discretion of a court. Plaintiffs here reassert that claim of discrimination, but it is clear that now that the real nature of the statutory scheme has been presented, their claim must be evaluated in a new light.[7]

*The Equal Protection Challenge*[8]

■ Although there was some argument to the contrary in the *Buffalo Teachers*

---

5. The provisions of Nassau County, Town of Rye, Delaware County and the Town of North Castle contain such a restriction. See note 9 *infra*.

6. See *Caso v. Nassau Co. Patrolmen's Benevolent Ass'n*, (Nassau Co. PERB 1976); *In re Local 342, Long Island Service Employees Union*, No. 109 (Village of Valley Stream PERB 1974); *In re Faculty Senate of Nassau Community College*, No. D–0001 (Nassau Co. PERB 1972).

7. Indeed, Judge Frankel must have realized the different factual basis for this action since he refused to accept assignment of this case as one related to his *Buffalo Teachers* case.

8. Defendants do not argue against the Court reaching the merits of plaintiffs' challenge. As Judge Frankel pointed out in *Buffalo Teachers*, even if the administrative proceedings were pending against all the plaintiffs, the ability of the PERB to adjudicate plaintiffs' constitutional claims is not apparent, and the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is not applicable. *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). The article 78 proceeding used in New York to review PERB decisions also apparently is not appropriate for a constitutional attack on the statute. See *Kovarsky v. Housing & Dev. Admin.*, 31 N.Y.2d 184, 335 N.Y.S.2d 383, 286 N.E.2d 882 (1972). Defendants also do not assert exhaustion of

case, the parties here agree that the equal protection standard of review appropriate to use is one which requires only a minimal rational relationship between the challenged classification and a legitimate state purpose. *See, e. g., Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 314–15, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). It seems clear to the Court that the issues raised in this challenge to the check-off suspension procedures are within the sphere of economic affairs where a "rational basis" is sufficient to uphold the statute. *See, e. g., City of New Orleans v. Dukes*, 427 U.S. 297, 303–04, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Plaintiffs do not argue here, as the plaintiffs did in *Buffalo Teachers*, that the challenged law should be "strictly scrutinized" as impinging on the rights of members to participate in union activities. *Cf. Police Department of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972), and even if they did, this Court agrees with Judge Frankel's holding that no "fundamental right" is affected by this statutory component. In this context, therefore, the simple rational basis test is appropriate. *Buffalo Teachers*, 435 F.Supp. at 1103–04 & n. 5.

Section 212 of the Taylor Law creates two classifications distinct from the state provisions for the PERB—one for the local jurisdictions that establish mini-PERBs and another for New York City. Plaintiffs, in basing their challenge on the *Buffalo Teachers* holding, assert that the difference between the PERB and mini-PERB procedures renders the scheme unconstitutionally discriminatory.

The only difference between the PERB and mini-PERB procedures, however, is that the mini-PERB has the option to proceed either administratively or judicially to effect the sanction of suspension. As Judge Frankel pointed out, the essential difference between these two alternatives is the standard under which the suspension is imposed. Under local provisions parallel to Section 210.3(f) of the Act, the mini-PERB "shall" suspend the dues privileges of a union found to have violated the Act, and under Section 751.2 of the Judiciary Law, the court "may" impose the penalty. Nonetheless, it is clear that the mini-PERBs, in order to meet the substantial equivalency test, must have the authority to impose the penalty without the aid of a judicial proceeding, just as the state PERB does.

As a result, the only difference in authority between the PERB and the mini-PERB is that a mini-PERB *may* limit its power to exclude those cases in which a contempt proceeding has been instituted and has reached a judgment on the merits. *See, e.g., In re Town of Rye*, PERB docket no. S–0055 (April 3, 1968) (recommending such a limitation in the local enactment).[9] Four out of thirteen jurisdictions establishing mini-PERBs have adopted such a limitation in their mini-PERB provisions.

The limitation of the power to impose the suspension penalty is nothing more than a recognition of the principle of *res judicata* as it relates to a court's determination on whether to impose the penalty. As stated in a PERB recommendation to a local government, the limitation is suggested in order to avoid the "possible imposition of a double penalty." *Id.* at 2. Because the

administrative remedies as a bar to adjudication of the merits here, as three out of four of the plaintiff's PERB proceedings have terminated. Indeed, defendants are in the unusual position, resulting from the inadequate record in *Buffalo Teachers*, of pressing for a decision here in the hope that an appeal from such a decision can be consolidated with the *Buffalo Teachers* appeal now pending before the Second Circuit.

**9.** Under § 210.3(c) of the state Act, when it appears that a violation has occurred,

"the chief legal officer of the government involved, or the [PERB] on its own motion, shall forthwith institute proceedings before the [PERB] to determine whether such employee organization has violated the provisions of subdivision one of this section." The PERB recommends that local provisions be worded identically to § 210.3(c), with the following clause added:
". . . unless an application to punish for contempt has been made pursuant to the last sentence of section 211 of the Civil Service Law and such application terminates in a judgment on the merits."

mini-PERBs were given the option to proceed in a contempt action, and the courts were specifically given the authority to impose the suspension penalty in such circumstances, it was deemed proper to prevent a mini-PERB from relitigating the issue if a court had reached a prior determination on the merits in the contempt action. In contrast, because the courts apparently do not have the authority to impose the suspension penalty in a case brought by the state PERB, there was no need to restrict the power of the PERB to impose the penalty, since there was no possibility of double sanctions. In any case, so long as a court has not made a final determination in a contempt action, the mini-PERBs have the same duty as the PERB to proceed against the offending union and to assess the penalty administratively.

■ The scheme, then, is not one in which only courts may impose the penalty on unions under mini-PERB jurisdiction. The mini-PERBs, just like the PERB, have the primary responsibility to take action to enforce the penalty; only when a court has already determined the issue is a mini-PERB precluded from taking such action. The distinction between the procedures seems to be one without effective legal difference. Moreover, whatever difference does exist is clearly rationally related to a legitimate state purpose.

Although the legislative history of the Act is sparse, it is clear that the general purpose of permitting the decentralization of public labor administration is based on a belief that "local political units are often in the best position to understand and deal with the problems affecting their employees . . . ." *N.Y. State Legislative Annual* (273–74 (1967) (Governor's memorandum issued upon enactment of the Taylor Law). This purpose led to a flexibility in the statutory scheme allowing for the creation of mini-PERBs, and allowing for local officials to consolidate their pursuits of dues privilege suspensions with contempt proceedings under Judiciary Law Section 751. It is apparent that the circumstances which could give rise to an injunction will not exist in all cases, especially when brief strikes or stoppages occur. When an injunction is obtained and then violated, however, the mini-PERB may pursue all its remedies in the court proceeding. This limited option given to mini-PERBs must be viewed as an essential element to provide the local flexibility desired.

Moreover, the difference in treatment, if it can be viewed as one, is not an accident of geography or the result of legislative caprice. The differing scheme arises only if a local government decides to establish local machinery for the supervision of public labor disputes. This exercise of local initiative is encouraged by the Taylor Law in an effort to promote more sensitive governmental responses to the particular problems of local public employees. Giving the mini-PERBs the limited option to pursue all the available remedies against a union in violation of the Act through a contempt action is one way in which the Act attempts to allow local administrators, who no doubt do not enjoy the resources of the PERB, an extra degree of flexibility. Certainly, this option cannot be viewed as "wholly irrelevant to the achievement of the State's objective" of increased local discretion. *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

Plaintiffs cite statistics which they assert support the conclusion of unequal treatment of PERB-supervised unions as opposed to those within mini-PERB jurisdictions. Specifically, it appears that ten work stoppages have occurred within mini-PERB jurisdictions outside of the City of New York. In those ten instances, three resulted in suspensions imposed by mini-PERBs. (Defendants assert that three of these stoppages did not involve unions, and a fourth was a "wildcat" strike for which a union could not be held responsible. Consequently, suspensions were imposed in half the applicable instances.) [10] During the same time period, there were 169 stoppages by

---

10. The three stoppages in which suspensions were not imposed were, we are told, very brief and involved only a day or so.

unions under the jurisdiction of the PERB, and in 112 of them the penalty was imposed. These statistics do not seem to portray a substantial difference of treatment between the two groups of unions. Even if they did, it is doubtful that they could in any way overcome the rational relationship that this Court has found between the subject classification and the legitimate state interest in localizing supervision of public employees. It should be expected that a decentralized scheme would not lead to absolute uniformity in enforcement statistics.

■ Plaintiffs also cite statements by the PERB itself that "the administrative machinery provided by the law does not insure a standard of even-handedness in the imposition of the statutory penalty." *In re United Federation of Teachers, Local 2, supra.* The Board's opinion on the overall fairness or effectiveness of the law, however, is a policy decision not specifically relevant to the question of constitutionality. Similarly, the Court's opinion of the wisdom of the law is not relevant to a principled determination of the constitutional issue:

> "When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determination as to the desirability of particular statutory discriminations. *See, e.g., Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973) . . . States are accorded wide latitude in the regulation of their local economies under the police powers, and rational distinctions may be made with substantially less than mathematical exactitude. . . . In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines . . . ."

*City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (citation omitted). For these reasons, this aspect of the Taylor Law's statutory scheme is not a violation of the Equal Protection Clause.

Similarly, the difference in treatment of New York City municipal workers clearly bears a rational relationship to the legitimate state interest involved. Municipal employees in New York City are governed by the city's Office of Collective Bargaining, pursuant to New York City Administrative Code, ch. 54 (1975). The Taylor Law, in Section 212.2, specifically permits a significant degree of independence on the part of city government in labor relations. The Collective Bargaining Board does not have the power to impose the suspension penalty like the PERB and mini-PERBs, but must rely on a court to do so in a contempt action. The legislative rationale for viewing the city as unique is portrayed in a subsequent legislative report:

> "The provisions in the Taylor Law permitting a local system in New York City reflected legislative recognition that public employee relations for New York City employees had developed more rapidly and in a somewhat different pattern than elsewhere in the state. It apparently was concluded that some degree of flexibility was appropriate in New York City rather than the imposition of a structure which might have disrupted the organizations and relationships developed over a substantial period of time."

*Report of the Joint Legislative Committee on the Public Employees Fair Employment Act,* N.Y. Legislative Document No. 25, at 20 (1972). Defendants also assert here that the reason that the city Board was not given the power to impose the dues privilege suspension was the presence of union representatives on the Board. Defendants state that giving the Board the power to impose the sanction in these circumstances would have been "inappropriate." While there is a temptation to be cynical concerning the reasons for giving New York City civil service unions preferred treatment, there is, concededly, a substantial difference between the realities of public labor problems there and in the rest of the state.

■ In any case, it appears that classifying New York City municipal employees differently from public employees through-

out the rest of the state is based in reason, and the different statutory treatment bears a rational relationship to the state interest in allowing local governments to develop their own machinery to supervise their own public employees. The city's size and history undoubtedly justify a particularized legislative view of the situation. Further, the composition of the Collective Bargaining Board, which is different from the neutral composition of the PERB or mini-PERB, justifies a conclusion that the Board should not have the same enforcement powers as the PERB and mini-PERBs. Of course, whether the New York City scheme is wise, or even whether it meets the substantial equivalency standard of the Taylor Law, is not for this Court to say.[11] So long as the different treatment is reasonably related to the state purpose, the Equal Protection Clause is not violated. *City of New Orleans v. Dukes, supra.*

It is apparent that plaintiffs have not demonstrated a likelihood that their constitutional claim is a valid one. The probability of success is, of course, a required showing on a motion for preliminary relief. *Triebwasser & Katz v. American Telephone & Telegraph Co.,* 535 F.2d 1356 (2d Cir. 1976); *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247 (2d Cir. 1973). *See generally* Mulligan, Preliminary Injunction in the Second Circuit, 43 Brooklyn L. Rev. 831 (1977). Since the plaintiffs have not sustained this burden, the other factors normally weighed upon such a motion need not be considered. Accordingly, the motion for a preliminary injunction is hereby denied.

SO ORDERED.

---

**11.** Defendants state in their brief that the PERB has recently notified the Mayor of the City of New York that the PERB intends to bring a declaratory judgment action, seeking a declaration that the New York City procedures are not substantially equivalent to the Taylor Law provisions.