676 F.2d 31
 110 L.R.R.M. (BNA) 2079, 4 Ed. Law Rep. 17
 Albert SHANKER, individually and as President of the United
Federation of Teachers, Local 2, American
Federation of Teachers, AFL-CIO, et al.,
Plaintiffs-Appellants,
v.
Robert D. HELSBY, individually and in his official capacity
as Chairman of the Public Employment Relations
Board, et al., Defendants-Appellees.
 No. 592, Docket 81-7402.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 24, 1982.
Decided April 1, 1982.
 
 Jeffrey S. Karp, New York City (James R. Sandner, Janis Levart Barquist, New York City, of counsel), for plaintiffs-appellants.
 Trudi Mara Schleifer, New York City (Allen G. Schwartz, Corp. Counsel of the City of New York, Leonard Koerner, New York City, of counsel), for Municipal defendants-appellees.
 Robert Abrams, Atty. Gen. of the State of New York, New York City. (George D. Zuckerman, Asst. Sol. Gen., Richard G. Liskov, Stanley A. Camhi, Asst. Attys. Gen., New York City, of counsel), for State defendants-appellees.
 Before FEINBERG, Chief Judge, and VAN GRAAFEILAND and MESKILL, Circuit Judges.
 FEINBERG, Chief Judge:
 
 
 1
 Plaintiffs, the United Federation of Teachers, Local 2, American Federation of Teachers, AFL-CIO (UFT), and its president, Albert Shanker, appeal from dismissal of their complaint under 42 U.S.C. § 1983 against the New York City Board of Education, the Public Employment Relations Board and its members, the Mayor and Controller of New York, and the City of New York.[1] In requesting declaratory and injunctive relief, appellants alleged that the dues checkoff forfeiture provision of a New York statute governing labor relations for public employees had been applied to them in a discriminatory fashion in violation of the Equal Protection Clause of the Fourteenth Amendment. After a non-jury trial in the United States District Court for the Southern District of New York, Judge John M. Cannella dismissed their complaint for the reasons set forth in his thorough and careful opinion, with which we assume the reader is familiar. The opinion is reported at 515 F.Supp. 871 (S.D.N.Y.1981).
 
 I.
 
 2
 The challenge here involves the provisions of the Public Employees' Fair Employment Act (the Act), N.Y.Civ.Serv.Law §§ 200-214 (McKinney 1973 & Supp. 1980-1981), commonly known as the Taylor Law. Enacted in 1967, the Taylor Law was designed to foster harmonious labor relations between government and its employees and to protect the public by assuring the uninterrupted operations of government. Id. § 200. To promote this goal, the Act accorded public employees the right to organize, have their chosen representative recognized, engage in collective bargaining and utilize effective grievance procedures. Id. §§ 202-204. In addition, recognized or certified employee organizations obtained the right to have membership dues regularly deducted from their members' paychecks, id. § 208.1(b), and an equivalent amount could also be deducted from non-members' salaries, id. § 208.3. The Act continued the prohibition against strikes by public employees, id. § 210.1, which had existed previously under the Condon-Wadlin Act; however, the Taylor Law substantially shifted penalties for violating the ban on strikes from individuals to employee organizations. Kheel, The Taylor Law: A Critical Examination of Its Virtues and Defects, 20 Syracuse L.Rev. 181, 182 (1968).
 
 
 3
 To assist in resolving disputes between public employees and their employers, the Act created the Public Employment Relations Board (PERB), which has statewide jurisdiction to impose penalties for violations of the Act's provisions. N.Y.Civ.Serv.Law §§ 205, 210. When it appears that the no-strike prohibition has been violated, the chief legal officer of the government involved in a labor dispute, or PERB on its own motion, may institute administrative proceedings against the employee organization before PERB to determine whether the no-strike provision has been violated. Id. § 210.3(c).[2] In making this determination, PERB considers whether the employee organization called the strike or tried to prevent it and whether it made or was making a good faith effort to terminate the strike. Id. § 210.3(e). Once PERB determines that an employee organization has violated the no-strike provision, it "shall order forfeiture" of membership dues deductions for a period of time that PERB, in its discretion, deems appropriate. Id. § 210.3(f). The forfeiture penalty is not to be imposed if the employees have staged a "wildcat" strike, see Amalgamated Transit Union v. Newman, 78 A.D.2d 105, 111, 434 N.Y.S.2d 292 (1980), or if a union-sanctioned strike was a response to extreme employer provocation, McHugh, New York's Experiment in Public Employee Relations: The Public Employees' Fair Employment Act, 32 Albany L.Rev. 58, 94 (1967); 1971-72 Report of the Joint Legislative Committee on the Taylor Law (Public Employees' Fair Employment Act), N.Y. Legislative Document No. 25, at 20 (1972 Report).
 
 
 4
 The Act also permits any government other than the State or a State public authority to choose an alternative to PERB's statewide enforcement mechanism. N.Y.Civ.Serv.Law § 212. When authorized by local statute or ordinance, public employers may create their own administrative boards to enforce the Act in their jurisdictions. These local boards, or "mini-PERBs," possess many of the same powers as PERB, for the Act requires them to adopt procedures that are "substantially equivalent" to PERB's. Id. PERB must find that this substantial equivalence standard is satisfied before a mini-PERB is created. Id.
 
 
 5
 A mini-PERB may order a dues checkoff forfeiture under its substantially equivalent procedures. Moreover, a court may exercise its discretion to impose such a forfeiture if it finds a union in contempt under N.Y.Jud.Law § 751.2(a) (McKinney Supp. 1980-1981). To avoid the imposition of double penalties, the authority of mini-PERBs to impose the dues checkoff forfeiture sanction administratively may be curtailed when the employer has already commenced contempt proceedings. In fact, PERB encourages such a procedure in determining whether a mini-PERB's procedures are substantially equivalent. PERB, A Guide to the Preparation of Local Enactments Pursuant to Section 212 of the Civil Service Law 11-12 (rev. ed. 1968). A public employer that initiates a contempt proceeding may also request that a court impose the dues checkoff forfeiture sanction in lieu of initiating administrative proceedings. This approach is quite different from that available to employers under PERB's jurisdiction, for then a court cannot impose the dues checkoff penalty as a sanction for contempt. Instead, PERB must order the forfeiture in administrative proceedings.
 
 
 6
 The Act makes special provisions for New York City because of its unique labor history. See generally, Note, The Taylor Law, the OCB and the Public Employee, 35 Brooklyn L.Rev. 214, 216-20 (1969). Although procedures adopted by New York City must be substantially equivalent to PERB's procedures, they need not be approved by PERB before going into effect. N.Y. Civ.Serv.Law § 212.2. PERB may, however, bring an action for declaratory judgment in New York County if it believes that New York City's procedures are not substantially equivalent. Id. In 1967, New York City enacted the New York City Collective Bargaining Law (NYCCBL), N.Y. City Charter and Administrative Code, ch. 54, §§ 1173-1.0 to 13.0 (1975 & Supp. 1981-1982), which established an Office of Collective Bargaining (OCB) and a Board of Collective Bargaining (BCB). The BCB is composed of seven members: two "city" members appointed by the mayor, two "labor" members appointed by the municipal labor committee and three "impartial" members elected by the city and labor members. Note, supra, at 219. Because of this tripartite structure, New York City did not adopt an administrative dues checkoff forfeiture procedure. Instead, the dues checkoff procedure can only be imposed by a court as a penalty for criminal contempt under N.Y. Jud. Law § 751.
 
 
 7
 As enacted in 1967, the NYCCBL provided for mandatory coverage of all mayoral agencies of New York City and their employees. Mayoral agencies consist of those agencies whose heads are appointed by the mayor. Note, supra, at 215 n.4. Non-mayoral agencies, such as the Board of Education, could come under OCB's jurisdiction only if the agency employer, with the mayor's approval, opted for OCB coverage. Otherwise, non-mayoral agencies automatically remained under PERB's jurisdiction. From 1967 to 1972, the Board of Education did not elect OCB coverage. After a strike by public employees in 1968, the state legislature ordered that "finality" mechanisms be included in the NYCCBL. In 1972, the New York City Council therefore amended the NYCCBL to add certain impasse resolution procedures, including binding arbitration. Partly in response to lobbying by appellants, the City Council simultaneously amended section 1173-4.0 to foreclose the Board of Education from electing OCB coverage for pedagogical and para-professional employees, such as those represented by plaintiff UFT.
 
 II.
 
 8
 Appellants contend before us that the statutory scheme, which we have described in some detail, has been applied to them in a discriminatory fashion. They have provided statistics demonstrating a disparity between the frequency with which the dues checkoff forfeiture has been imposed on New York City municipal unions covered by OCB and those covered by PERB. Appellants claim that while their dues checkoff privilege has been forfeited each time that they engaged in a strike, the forfeiture penalty has never been imposed on any municipal union under OCB's jurisdiction.[3] Appellants concede, however, that PERB has imposed the dues checkoff forfeiture in 96.6% of the cases in which it determined that an employee organization had violated the no-strike prohibition. Appellants also point to various reports and decisions criticizing the disparate treatment of employee organizations under PERB's and OCB's jurisdiction to support appellants' claim of discriminatory application. 1972 Report at 30; United Federation of Teachers, 9 P.E.R.B. 3125, 3129 n.2 (1976).
 
 
 9
 Appellants neither constitute a suspect class nor assert a fundamental interest, hence, to withstand judicial review, the challenged procedures need only be rationally related to furthering a legitimate state interest. Vance v. Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979); Civil Service Employees Association, Inc. v. Helsby, 439 F.Supp. 1272, 1276-77 (S.D.N.Y.1977). Under this standard of review, the Act as administered passes constitutional muster.
 
 
 10
 The mere fact that separate administrative bodies mete out different penalties, without more, does not violate equal protection. Here, each agency has concededly dealt with the employee organizations under its jurisdiction in an even-handed fashion. PERB has applied the sanction in virtually all of the cases before it, while apparently the New York courts have, within their discretion, chosen not to apply the penalty in any of the cases before them. Absent any showing of invidious intent in the operation of separate administrative bodies, appellants' claim of discriminatory application simply cannot stand. Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944); see DiMaggio v. Brown, 19 N.Y.2d 283, 289-91, 279 N.Y.S.2d 161, 225 N.E.2d 871 (1967) (invidious intent must be established to prove equal protection violations due to discriminatory application of Condon-Wadlin Act).
 
 
 11
 In fact, insofar as appellants attack the very existence of separate administrative bodies with different procedures, they are challenging the law on its face in the guise of claiming discriminatory application. To the extent that appellants do attack the legislative scheme as drafted, we find that the provisions bear a rational relation to the legitimate state interest in fostering harmonious labor relations between public employers and employees and in protecting the public by assuring uninterrupted government operations. Keeping in mind the innovative, experimental nature of the Act, King, The Taylor Act-Experiment in Public Employer-Employee Relations, 20 Syracuse L.Rev. 1, 1 (1968), we find that the legislature could reasonably have concluded that providing for some local autonomy would foster harmonious relations, especially in light of New York City's unique labor history. Civil Service Employees Association, Inc. v. Helsby, 439 F.Supp. at 1278-80; see generally, Note, supra, at 216-20. By creating different mechanisms for imposing the dues checkoff forfeiture, the legislature simply recognized the particularized needs of New York City.
 
 
 12
 We note also that appellants' own past conduct weakens their argument that the challenged scheme is irrational. The impasse resolution procedures for organizations under OCB's jurisdiction have for many years differed from those for organizations under PERB's jurisdiction. At the time that inclusion of the Board of Education under OCB's jurisdiction was considered, the UFT lobbied against such inclusion because it did not want to be subject to OCB's impasse resolution procedures. Shanker v. Helsby, 515 F.Supp. at 878 & n.13. Having found the dues forfeiture penalty imposed by PERB distasteful, the UFT now seeks to challenge its treatment insofar as it differs from that of unions under OCB's jurisdiction. Previous lobbying activities do not, of course, preclude appellants from asserting their equal protection claim now, as the district judge concluded. Id. Yet, having discovered that what was originally perceived as a legislative victory may now in certain ways be a loss, the UFT can not obtain piecemeal reform in the federal courts on the ground that the legislative and administrative framework is irrational. Under the circumstances, appellants' appropriate recourse is to the legislative forum for rectification of an allegedly improvident decision made by that branch. United States Railroad Retirement Board v. Fritz, 449 U.S. 166, 179 & n.12, 101 S.Ct. 453, 461 n.12 (1980).
 
 
 13
 We therefore affirm the judgment of the district court.
 
 
 
 [1]
 The original complaint also named Mark Chaykin and Lena Waltzman as plaintiffs, both individually and on behalf of other teachers employed by the Board. Appellants, however, never moved for class certification under Fed.R.Civ.P. 23(c), and the district court therefore concluded that they had abandoned their class action allegations. Shanker v. Helsby, 515 F.Supp. 871, 873 n.1 (S.D.N.Y.1981)
 
 
 [2]
 The chief legal officer shall also apply to the New York Supreme Court for an order enjoining an impending strike by public employees. If the employee organization or the employees fail to comply with the injunction, the chief legal officer "shall forthwith" commence criminal contempt proceedings under N.Y.Jud.Law § 750 (McKinney 1975) in the New York Supreme Court. N.Y.Civ.Serv.Law § 211. The state court may, in its discretion, fix a fine for each day that the contempt continues. N.Y.Jud.Law § 751.2(a) (McKinney Supp. 1980-1981)
 
 
 [3]
 The penalty was levied against the Uniformed Sanitationmen's Association, but it was never imposed because the New York Supreme Court subsequently remitted the penalty. On appeal, defendants also claim that the sanction was imposed on another municipal union under PERB's jurisdiction, the Transit Workers' Union, after this litigation commenced, but this information is not part of the record in the district court. This allegation therefore has played no part in reaching a decision here