█ In the Matter of MICHAEL D. VITO, SR., et al., Petitioners, v THOMAS C. JORLING, as Commissioner of the New York State Department of Environmental Conservation, et al., Respondents. [603 NYS2d 64] —Mahoney, J. Proceeding pursuant to

CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Environmental Conservation which, *inter alia,* imposed a civil penalty upon petitioner Michael Don Vito, Sr. for violating certain regulations of the Department of Environmental Conservation.

Petitioner Michael Don Vito, Sr. (hereinafter petitioner) owns and operates a gasoline filling station in the Town of Colonie, Albany County. Located on the property are eight underground petroleum storage tanks with a total capacity of 25,500 gallons. As a result of the 1983 enactment of controls on the storage of bulk petroleum (ECL 17-1001 *et seq.),* petitioner was required to and did register his tanks with the Department of Environmental Conservation (hereinafter DEC). However, because six of the tanks were of unknown age at the time of registration, petitioner was required by law to have them tested for leaks within two years, in this case December 1987 (6 NYCRR 613.5 [a] [ii]). Up until July 29, 1988, noncompliance subjected the responsible party to civil penalties of up to $10,000 per day for each violation; thereafter, the penalty was raised to $25,000 per day (ECL 71-1929 [1]; 6 NYCRR 613.1 [f]).

Unfortunately, petitioner did not test his tanks by the December 1987 deadline. While DEC notified him by letter in June 1990 that he was out of compliance, when petitioner still took no action DEC commenced an administrative enforcement proceeding (ECL 17-0303; 6 NYCRR part 622). Included therewith was a motion for a summary order seeking, *inter alia,* $59,044 in civil penalties. Following unsuccessful settlement negotiations, an administrative hearing was conducted. It being uncontroverted at the hearing that petitioner failed to test six of his tanks as required by law, the Administrative Law Judge (hereinafter ALJ) issued a recommendation that the motion be granted. On the subject of penalty, however, the ALJ had some difficulty, commenting that based upon a review of similar situations "[a] penalty of at least $20,000 * * * would not appear to be inappropriate, but a much higher penalty is equally justifiable". Upon review, respondent Commissioner of Environmental Conservation (hereinafter respondent) imposed the full $59,044 penalty, noting that the method used by DEC in calculating the penalty was reasonable and in accord with respondent's policy of "tak[ing] into account * * * the economic benefit of the illegal activity as well as provid[ing] * * * a penal component".

Thereafter, petitioner and his contract vendees, petitioners Harvey M. King and Anthony J. Conde, commenced this CPLR article 78 proceeding against the ALJ and respondent to review the latter's determination, arguing that it was not supported by substantial evidence, was based upon a policy of selective enforcement and the penalty was excessive. Following denial of respondents' motion to dismiss upon certain objections in point of law, Supreme Court transferred the proceeding to this Court pursuant to CPLR 7804 (g).

In light of petitioner's admission that he failed to conduct the required tightness tests, there can be little doubt but that respondent's determination finding petitioner to have violated ECL 17-1001 *et seq.* and 6 NYCRR 613.1 (b) and 613.5 (a) (ii) is supported by substantial evidence. However, we must, on this record, agree with petitioner that when the $59,044 penalty is viewed, as it must be, in context with the nature of the misconduct, the degree of harm or potential for harm that the misconduct visits on the public welfare and prevailing societal views *(see, e.g., Matter of Pell v Board of Educ.,* 34 NY2d 222, 234-235; *Matter of S & J Pharmacies v Axelrod,* 91 AD2d 1131, 1132), it is excessive. While, unarguably, petitioner's conduct cannot be said to be inadvertent and it is evident from a review of the legislative history underlying enactment of the bulk petroleum controls (ECL 17-1001 *et seq.)* that the potential for harm from underground petroleum storage tanks is, as respondents note, significant *(see generally,* Bill Jacket, L 1983, ch 613), we are disturbed in this case by two facts: first, the conspicuous omission of the *complete* calculation methodology DEC used to arrive at the $59,044 penalty, most particularly the amounts representing economic benefit and interest *(cf., Matter of Deutsch Relays v New York State Dept. of Envtl. Conservation,* 179 AD2d 756), and second, the fact that DEC was willing to settle the case for a meager $500 penalty.

The juxtaposition of these two figures strongly suggests that DEC viewed petitioner's derelictions to be not as egregious as to warrant the imposition of a significant penalty. Although respondents attempt to explain this disparity as representing the value of petitioner's cooperation, it is incomprehensible to us how petitioner's failure to cooperate can justify raising the civil penalty to an amount approximately 1,200 times greater than the nonsuspended settlement amount. This, accompanied by the fact that petitioner is a small businessperson and the lack of any affirmative evidence that the tanks are in fact leaking leads us to conclude that the penalty imposed is not only excessive but is unsupported by the record. In our view, a

penalty of $25 per day for the 913 days petitioner was out of compliance, which is DEC's base rate or $22,825 in total, is more in line with tailoring the severity of the violation and need for deterrence with the particular circumstances of this case.

As a final matter, we agree with respondents that Supreme Court erred in ruling on their application to dismiss the proceeding against the ALJ and to dismiss petitioners' selective enforcement claim.* Clearly, the ALJ is not a proper party. She did not issue the administrative order under review here and no relief is sought against her. Regarding the selective enforcement claim, the petition alleges only that "[petitioner] was chosen for prosecution based upon a policy of selective enforcement". Absent are any necessary allegations (or evidence) that the law was not applied to others similarly situated or that petitioners' prosecution was the result of intentional discrimination or based upon an unjustifiable standard such as race, religion or otherwise (see, e.g., Matter of Di Maggio v Brown, 19 NY2d 283, 290-292).

We have reviewed petitioners' remaining contentions and find them to be unpreserved for review.

Weiss, P. J., Mercure, Cardona and Casey, JJ., concur. Adjudged that the determination is modified, without costs, by reversing so much thereof as denied respondents' motion to dismiss the entire proceeding against respondent Judith K. Bentley and denied the motion to dismiss the selective enforcement claim; motions granted, said claims are dismissed and the penalty imposed is reduced to $22,825; and, as so modified, confirmed.

---

* Inasmuch as CPLR 7804 (g) statutorily empowers us to dispose of all issues in a transferred CPLR article 78 proceeding such as this, the fact that respondents did not file a notice of appeal from that part of Supreme Court's order denying their motion to dismiss does not preclude our review of these issues.