Albert **SHANKER**, individually and as President of the United Federation of Teachers, Local 2, American Federation of Teachers, AFL–CIO, et al., Plaintiffs,

v.

Robert D. **HELSBY**, individually and in his official capacity as Chairman of the Public Employment Relations Board, et al., Defendants.

**76 Civ. 4965 (JMC).**

United States District Court,
S. D. New York.

March 18, 1981.

James R. Sandner, New York City (Jeffrey S. Karp and Janis L. Barquist, New York City, of counsel), for plaintiffs.

Allen G. Schwartz, Corporation Counsel, New York City (Lorna Bade Goodman, New York City, of counsel), for the municipal defendants.

Robert Abrams, Atty. Gen., for the State of New York, New York City (Richard G. Liskov and Stanley Camhi, Asst. Attys. Gen., New York City, of counsel), for the state defendants.

## OPINION

CANNELLA, District Judge.

After a trial on the merits of plaintiffs' complaint, the Court finds for the defendants, and the complaint is dismissed.

## FACTS

Plaintiffs, the United Federation of Teachers, Local 2, American Federation of Teachers, AFL–CIO ["UFT"], and its Presi-

dent, Albert Shanker,[1] bring this action pursuant to 42 U.S.C. § 1983 seeking to enjoin the enforcement of the October 8, 1976 order of the Public Employment Relations Board ["PERB"] mandating the forfeiture of the UFT's dues checkoff privilege.[2] Plaintiffs challenge as a denial of equal protection under the fourteenth amendment the manner in which the dues checkoff forfeiture is administered under the different jurisdictions created by New York's Taylor Law.

■ The UFT is subject to the jurisdiction of PERB which plaintiffs contend *must* impose the dues checkoff forfeiture if it determines after administrative proceedings that a union-sanctioned strike has occurred.[3] Plaintiffs argue that this treatment is far more severe than that experienced by unions under the jurisdiction of New York City's Office of Collective Bargaining ["OCB"], where the dues checkoff forfeiture is available only in the context of a contempt proceeding instituted by the public employer under section 751 of the New York Judiciary Law. In support of their contention that the statutory scheme as applied discriminates against the UFT, plaintiffs argue that the UFT is the only New York City-based union to have its dues checkoff privilege suspended three times since 1967. No municipal union under the jurisdiction of OCB has ever had the privilege suspended even though eighteen work stoppages have occurred within OCB's jurisdiction, six of which have led to contempt proceedings.[4]

The following series of events precipitated this lawsuit. During New York City's fiscal crisis, negotiations between the UFT and the Board broke down, and the UFT went on strike from September 9 to September 16, 1975, which was the third strike staged by the UFT since 1967. On October 10, 1975, the New York City Corporation Counsel filed charges with PERB alleging that the UFT had violated the no-strike

1. The complaint (filed Nov. 9, 1976) also names as plaintiffs Mark Chaykin and Lena Waltzman, individually and on behalf of other teachers employed by defendant New York City Board of Education [the "Board"]. Plaintiffs, however, have never moved for class certification pursuant to Fed.R.Civ.P. 23(c) and the Court therefore deems their class action allegations to be abandoned. Plaintiffs have also abandoned their demand for declaratory relief.

2. Defendants are the members of PERB, the Mayor and Controller of the City of New York, the City of New York, the Board and its members.

3. Other New York City-based public employers that are under PERB's jurisdiction include the New York City Transit Authority, the Board of Higher Education, the Triborough Bridge and Tunnel Authority, the New York City Public Library, and New York City's Zoos. *See* Municipal Defendants' Post Trial Memorandum of Law at 14 (filed June 11, 1980).

4. *See* Transcript of Proceedings, *Shanker v. Helsby*, 76 Civ. 4965 (JMC), at 13–15 (filed July 25, 1980) [hereinafter "Tr."]; Plaintiffs' Exhibit 5 (filed May 21, 1980). In one case under OCB's jurisdiction, the Court remitted the forfeiture penalty it had previously imposed on the sanitationmen's union. *See City of New York v. DeLury*, No. 40251/1968 (Sup.Ct., N.Y. County filed June 4, 1970).

With respect to plaintiffs' other exhibits, plaintiffs offered certain exhibits at trial which were thereafter submitted to the Court as Exhibits 1 through 5. *See* Plaintiffs' Post-Hearing Brief Volume II, Exhibits 1–5 (filed May 21, 1980). The defendants have no objection to Exhibits 1, 2, 3, and 5 and they are hereby received in evidence. The municipal defendants object to the admission of Exhibit 4, the deposition of Ida Klaus, a member of PERB and a defendant herein, on the grounds that the municipal defendants inadvertently were not notified of the date of that deposition, which was held on April 10, 1979, and consequently did not attend. Thereafter, plaintiffs' counsel offered to reschedule the deposition for the benefit of the municipal defendants, but counsel for the municipal defendants never accepted that offer. *See* Affidavit of Thomas C. Greble, ¶¶ 4, 5 (filed July 26, 1979). Although it is true that Fed.R.Civ.P. 32(a) only permits the use of a deposition against a party who was present or represented at the deposition, under the circumstances of the present action where the Klaus deposition was taken more than a year before trial, at which time counsel for the state defendants was present, and the municipal defendants were given the opportunity to depose Klaus, the Court will not foreclose the use of the Klaus deposition on this technical ground. Accordingly, the Court receives Plaintiffs' Exhibit 4 in evidence.

provision of the Taylor Law. On October 8, 1976, PERB found that the UFT had violated the Taylor Law and ordered the forfeiture of the UFT's dues checkoff privilege for an indefinite period, subject to a two-step procedure through which the UFT could apply for conditional restoration after fourteen months and full restoration after two years. *See* Complaint, Exhibit A. Shortly thereafter, plaintiffs commenced the present action, which was originally assigned to former Judge Frankel. The parties have voluntarily agreed to postpone enforcement of the forfeiture until plaintiffs' constitutional challenge is resolved.

*The Taylor Law*

The Public Employees' Fair Employment Act, commonly referred to as the Taylor Law, N.Y.Civ.Serv.Law § 200 *et seq.* (McKinney 1973) [the "Act"], was enacted in 1967 to foster the public policy of harmonious labor relations between governments and their employees. *See id.* § 200.[5] To promote this public policy, public employees were accorded certain rights, including the rights to organize, to have their chosen representative recognized, to engage in collective negotiation with their employer and to utilize effective grievance procedures. *Id.* §§ 202, 203, 204. Section 208.1(b) grants recognized or certified employee organizations the right to have membership dues regularly deducted from their members' paychecks, and section 208.3 grants such organizations the right to have an amount equivalent to the organization's dues deducted from non-members' salaries.[6]

The Act creates PERB to "assist in resolving disputes between public employees and public employers," *id.* § 200(d), including disputes concerning representation status of employee organizations. PERB is also granted broad powers to enforce section 209–a concerning improper employer and employee organization practices; to make studies; to obtain and to supply information; to hold hearings and to adopt rules and regulations. *See id.* § 205. PERB has statewide jurisdiction to impose penalties for violations of the Act's provisions. Section 210.1, the heart of the Act's regulatory scheme, prohibits strikes by public employees throughout the State. When it appears that the no-strike provision has

---

5. A succinct statement of the policy considerations underlying the Taylor Law is found in section 200:

The legislature of the state of New York declares that it is the public policy of the state and the purpose of this act to promote harmonious and cooperative relationships between government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government. These policies are best effectuated by (a) granting to public employees the right of organization and representation, (b) requiring the state, local governments and other political subdivisions to negotiate with, and enter into written agreements with employee organizations representing public employees which have been certified or recognized, (c) encouraging such public employers and such employee organizations to agree upon procedures for resolving disputes, (d) creating a public employment relations board to assist in resolving disputes between public employees and public employers, and (e) continuing the prohibition against strikes by public employees and providing remedies for violations of such prohibition.

N.Y.Civ.Serv.Law § 200 (McKinney 1973) (footnote omitted).

6. (a) The term "membership dues deduction" means the obligation or practice of a government to deduct from the salary of a public employee with his consent an amount for the payment of his membership dues in an employee organization. Such term also means the obligation or practice of a government to transmit the sums so deducted to an employee organization.

(b) The term "agency shop fee deduction" means the obligation or practice of a government to deduct from the salary of a public employee who is not a member of the certified or recognized employee organization which represents such employee for the purpose of collective negotiations conducted pursuant to this article, an amount equivalent to the amount of dues payable by a member. Such term also means the obligation or practice of a government to transmit the sums so deducted to an employee organization.

*Id.* § 201.2 (McKinney Supp. 1980–1981). The right to membership dues deduction greatly facilitates the collection of union dues, and although its revocation does not affect a member's obligation to pay dues, as a practical matter revocation of the dues deduction results in a substantial loss of revenue to the employee organization involved.

been or will be violated, the Act provides certain remedies. The chief legal officer of the government involved in a labor dispute shall apply to the New York Supreme Court for an order enjoining an impending strike by public employees. *Id.* § 211. If the employees or their organization do not comply with the injunction, the chief legal officer "shall forthwith" institute criminal contempt proceedings in the Supreme Court pursuant to New York Judiciary Law § 750 (McKinney 1975). The Supreme Court, in its discretion, may fix a fine for each day the contempt persists. N.Y.Jud.Law § 751.-2(a) (McKinney Supp. 1980–1981).

In addition to the foregoing procedures, section 210.3 requires the chief legal officer, or PERB on its own motion, to institute administrative proceedings against the employee organization before PERB to determine whether the employee organization has violated section 210.1. In determining whether the employee organization violated section 210.1 by instigating or condoning the strike, PERB considers whether the employee organization called the strike or tried to prevent it and whether it made or was making a good faith effort to terminate the strike. N.Y.Civ.Serv.Law § 210.3(e) (McKinney 1973).

 Once PERB determines that an employee organization has violated the no-strike provision of the Act, PERB "shall order forfeiture" of the membership dues and agency shop fees deductions for such period of time as PERB, in its discretion, deems appropriate. *Id.* § 210.3(f) (McKinney Supp. 1980–1981). In determining the duration of the forfeiture, PERB

> shall consider all the relevant facts and circumstances, including but not limited to: (i) the extent of any wilful defiance of subdivision one of this section (ii) the impact of the strike on the public health, safety, and welfare of the community and

(iii) the financial resources of the employee organization; and the board may consider (i) the refusal of the employee organization or the appropriate public employer or the representative thereof, to submit to the mediation and fact-finding procedures provided in section two hundred nine and (ii) whether, if so alleged by the employee organization, the appropriate public employer or its representatives engaged in such acts of extreme provocation as to detract from the responsibility of the employee organization for the strike. In determining the financial resources of the employee organization, the board shall consider both the income and the assets of such employee organization. In the event membership dues are collected by the public employer . . ., the books and records of such public employer shall be prima facie evidence of the amount so collected.

*Id.*[7] PERB will not penalize an employee organization if its members have staged "wildcat" strikes. Moreover, although merely considered a factor in determining the duration of the penalty in section 210.-3(f), PERB may not impose any forfeiture upon an employee organization when extreme employer provocation caused a union-sanctioned strike. *See* Plaintiffs' Exhibit 4, Deposition of Ida Klaus at 6 (filed May 21, 1980); Plaintiffs' Exhibit 3, *Report of the Joint Legislative Committee on the Public Employees Fair Employment Act,* N.Y. Legislative Document No. 25, at 20 (1972) [hereinafter "1972 Report"]. Absent some form of extreme provocation, however, PERB has interpreted the Act as requiring it to impose the forfeiture penalty, although PERB retains broad discretion in determining the duration of the penalty.

Section 212 of the Act[8] permits local governments other than the State and a

---

7. In addition to the penalties imposed upon the employee organization during contempt proceedings or proceedings before PERB, the chief fiscal officer of the public employer shall deduct from a striking employee's salary an amount equal to twice his daily rate of pay for each day the strike continues. *Id.* § 210.2(g).

8. Section 212 provides that the provisions of the Act, with certain exceptions, are inapplicable to

> any government (other than the state or a state public authority) which, acting through its legislative body, has adopted by local law,

State public authority, to choose an alternative to PERB's statewide enforcement of the Act. When authorized by local statute or ordinance, public employers[9] may create their own administrative boards to enforce the Taylor Law in their jurisdiction. The local boards, commonly referred to as "mini-PERBs," possess many of the same powers as PERB since section 212 requires mini-PERBs to adopt procedures "substantially equivalent" to those used by PERB. Moreover, this section permits the creation of a mini-PERB only after PERB has found that the proposed regulations of the local government comply with the substantial equivalence standard. *See Buffalo Teachers Federation, Inc. v. Helsby*, 515 F.Supp. 215 (S.D.N.Y.1981) [hereinafter *"Buffalo Teachers Opinion"*].

Any mini-PERB having jurisdiction over a public employer may impose the dues checkoff sanction administratively under its substantially equivalent procedures.[10] In addition, a court may impose the same sanction if it finds the union in contempt under section 751.2(a) of the New York Judiciary Law (McKinney Supp. 1980–1981), which provides in pertinent part:

> Where an employee organization . . . wilfully disobeys a lawful mandate of a court of record, or wilfully offers resistance to such lawful mandate, in a case involving or growing out of a strike in violation of subdivision one of section two hundred ten of the civil service law, the punishment for each day that such contempt persists may be a fine fixed in the discretion of the court. In the case of a government exempt from certain provisions of article fourteen of the civil service law, pursuant to section two hundred twelve of such law [mini-PERB and OCB Governments], the court may, as an additional punishment for such contempt, order forfeiture of the rights [to membership dues and agency shop fees deductions] . . . .

Accordingly, a public employer that initiates a contempt proceeding in a mini-PERB jurisdiction may request the court to impose the dues checkoff sanction in lieu of initiating administrative proceedings. The court may impose that penalty in addition to

---

ordinance or resolution, its own provisions and procedures which have been submitted to the board [PERB] by such government and as to which there is in effect a determination by the board that such provisions and procedures and the continuing implementation thereof are substantially equivalent to the provisions and procedures set forth in this article.

2. With respect to the city of New York, such provisions and procedures need not be related to the end of its fiscal year; and with respect to provisions and procedures adopted by local law by the city of New York no such submission to or determination by the board shall be required, but such provisions and procedures shall be of full force and effect unless and until such provisions and procedures, or the continuing implementation thereof, are found by a court of competent jurisdiction, in an action brought by the board in the county of New York for a declaratory judgment, not to be substantially equivalent to the provisions and procedures set forth in this article.

*Id.* § 212. Since section 210.3, which grants PERB the power to impose the dues checkoff forfeiture, is not listed among the sections of the Act that remain applicable to public employers creating mini-PERBs, such local boards are free to devise their own "substantially equivalent" procedures to revoke the dues checkoff privilege.

**9.** The term "government" or "public employer" means (i) the state of New York, (ii) a county, city, town, village or any other political subdivision or civil division of the state, (iii) a school district or any governmental entity operating a public school, college or university, (iv) a public improvement or special district, (v) a public authority, commission, or public benefit corporation, or (vi) any other public corporation, agency or instrumentality or unit of government which exercises governmental powers under the laws of the state.

*Id.* § 201.6(a). There is no dispute that the Board is a public employer within the meaning of the Act. *See* Plaintiffs and Municipal Defendants' Joint Statement of Facts, ¶ 4 (dated Jan. 2, 1980).

**10.** PERB will not approve mini-PERB plans which do not include provisions for the administrative revocation of dues checkoff deductions. *See* Department of Civil Service Rules and Regulations, Part 203—Procedures For the Approval or Review of Local Government Procedures Under Section 212 of the Act, § 203.7, N.Y.Civ.Serv.Law (McKinney 1973).

levying a fine.[11] This procedure is different from that available to employers under PERB's jurisdiction since the dues checkoff forfeiture can only be imposed administratively by PERB on unions found to have violated the Act, and is not available in the context of contempt proceedings.

The authority of mini-PERBs to impose the dues checkoff sanction administratively may be curtailed when the employer has already instituted contempt proceedings. In that situation, PERB, in considering the substantial equivalence of local procedures, encourages mini-PERBs to provide in their local regulations that administrative procedures to impose the sanction will not be available when contempt proceedings have been terminated on the merits. *See* PERB, *A Guide to the Preparation of Local Enactments Pursuant to Section 212 of the Civil Service Law* 11–12 (rev. 1968). The purpose of this restriction on administrative penalties is to prevent the imposition of double penalties.

Special provisions are made for New York City under the Taylor Law. Section 212.2 provides that the procedures adopted by the City of New York need not be approved by PERB before becoming effective, although they must be substantially equivalent to PERB's procedures. PERB may, however, bring a declaratory judgment action in New York county to declare New York City procedures not to be substantially equivalent to PERB's procedures. To date, PERB has never instituted such an action. In 1967, New York City, pursuant to section 212.2, enacted its own public employment relations law, the New York City Collective Bargaining Law ["NYCCBL"]. *See* New York City Charter and Administrative Code, Ch. 54, § 1170 *et seq.* (1976). The NYCCBL established an Office of Collective Bargaining ["OCB"] and a Board of Collective Bargaining ["BCB"] possessing many of the same powers as PERB. The BCB consists of seven members: two "city" members appointed by the mayor, two "labor" members appointed by the municipal labor committee and three "impartial members" elected by the city and labor members. *See id.* § 1171. Due primarily to the tripartite structure of the BCB, New York City declined to adopt an administrative dues checkoff forfeiture procedure similar to the one contained in section 210.3 of the Act. Consequently, the dues checkoff forfeiture may not be imposed administratively, but only by a court as a penalty for criminal contempt under the provisions of section 751 of the New York Judiciary Law.

The NYCCBL, as enacted in 1967, provided for the mandatory coverage of all mayoral agencies of the City of New York and their employees, although non-mayoral agencies, such as the Board, could come under its jurisdiction at the option of the agency employer and with the approval of the mayor. Those non-mayoral agencies not opting for OCB coverage automatically remained under PERB's jurisdiction. From 1967 to 1972, the Board did not elect OCB coverage.

Following the 1968 sanitation strike, the State Legislature mandated the inclusion of

---

11. Section 751.2(a) of the New York Judiciary Law (McKinney Supp. 1980–1981) provides that a court will consider the same factors as those considered by PERB under N.Y.Civ. Serv.Law § 210.3(f) in determining the duration of the dues checkoff forfeiture:

In fixing the amount of the fine and/or duration of the forfeiture, the court shall consider all the facts and circumstances directly related to the contempt, including, but not limited to: (i) the extent of the wilful defiance of or a resistance to the court's mandate (ii) the impact of the strike on the public health, safety, and welfare of the community and (iii) the ability of the employee organization to pay the fine imposed; and the court may consider (i) the refusal of the employee organization or the appropriate public employer, as defined in section two hundred one of the civil service law, or the representatives thereof, to submit to the mediation and fact-finding procedures provided in section two hundred nine of the civil service law and (ii) whether, if so alleged by the employee organization, the appropriate public employer or its representatives engaged in such acts of extreme provocation as to detract from the responsibility of the employee organization for the strike. In determining the ability of the employee organization to pay the fine imposed, the court shall consider both the income and the assets of such employee organization.

"finality" mechanisms in the NYCCBL. Accordingly, in 1972, the New York City Council amended the NYCCBL to include impasse resolution procedures, including binding arbitration. Simultaneously, the City Council amended section 1173–4.0 to foreclose the Board from electing coverage under the OCB for its pedagogical and paraprofessional employees. Section 1173–4.0 now provides that the NYCCBL shall apply to:

a. all municipal agencies and to the public employees and public employee organizations thereof;

b. any agency or public employer, and the public employees and public employee organizations thereof, which have been made subject to this chapter by state law;

c. any other public employer and to the public employees and public employee organizations thereof, but only to the extent to which the public employer or the head thereof elects by executive order to make this Chapter applicable, in whole or in part, upon such terms and conditions as the mayor may approve, provided,

however, that any such election by the New York city board of education shall not include any employee appointed through the board of examiners of the New York City board of education or any paraprofessional employees with teaching functions.[12]

■ In seeking to foreclose consideration of the merits of plaintiffs' claim, defendants argue that plaintiffs are estopped from challenging the application of the statutory scheme since Albert Shanker, by voicing his opposition to the binding arbitration provisions of the amended NYCCBL, was responsible for the amendment precluding the Board from electing coverage under OCB for its pedagogical and paraprofessional employees. The Court finds that defendants' position in this area is neither factually nor legally supportable.[13]

It appears that PERB has a more stringent attitude toward the imposition of the sanction than do the courts who are charged with the imposition of the penalty for unions under OCB's jurisdiction.[14] In footnote two of its decision in the UFT's forfeiture proceedings, PERB noted that

12. Similarly, prior to its merger with the State system, the New York City Board of Higher Education, which operates the City University system, had opted for OCB jurisdiction for its nonpedagogical employees while remaining under PERB's jurisdiction for its pedagogical employees. Since becoming part of the State system, all employees of the New York City Board of Higher Education are under PERB's jurisdiction.

13. It is true that after the City received the mandate from the State Legislature requiring the inclusion of "finality" mechanisms in the NYCCBL, Shanker voiced his opposition to binding arbitration and its application to any employees of the Board. At that time, Shanker did not wish the Board to elect coverage under OCB. It is equally true, however, that several members of the Board and its director of staff relations, Ida Klaus, who is now a member of PERB, opposed the Board's election of OCB jurisdiction. See Tr. at 56. Furthermore, there is no dispute that until the 1972 amendment, the decision to elect OCB coverage for any Board employee, including pedagogical and paraprofessional employees, rested solely with the Board, which did not elect coverage, and that since that time the Board has not elected coverage for the remaining Board employees for whom the option is still available. Moreover, the OCB and representatives of the Mu-

nicipal Labor Committee, to which neither Shanker nor the UFT belonged, jointly drafted the 1972 amendment, and the New York City Council finally adopted the amendment. Therefore, the Court concludes that Shanker and the UFT were not responsible for the exclusion of the Board's pedagogical and paraprofessional employees from the option of electing OCB coverage.

The Court also finds that the UFT's opposition to OCB jurisdiction based largely upon its opposition to binding arbitration cannot be considered a clear and knowing waiver of its equal protection challenge to the alleged disparate treatment afforded unions under PERB's jurisdiction when compared with unions under OCB's jurisdiction regarding the dues checkoff forfeiture. In an area in which courts indulge all reasonable presumptions against waiver, see *Garner v. Tristate Development Company*, 382 F.Supp. 377 (E.D.Mich.1974), it is certain that defendants have not demonstrated "an intentional relinquishment or abandonment of a known right or privilege" based on the record in the instant case. *Brookart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966).

14. The Joint Legislative Committee on the Act recognized that the present decentralized system of enforcing the forfeiture penalty in practice yielded less than uniform results:

"the administrative machinery provided by the Law does not insure a standard of evenhandedness in the imposition of the statutory penalty of forfeiture of dues deduction privileges." *In re United Federation of Teachers, Local 2*, 9 PERB ¶ 3071, at 3129 n.2 (1976).[15] Similarly, in his 1969 report to the New York Legislature, Mayor Lindsay

PERB has the responsibility for administration of the penalty of withdrawal of the dues checkoff in connection with illegal strikes except in New York City and in the jurisdiction of upstate mini-PERBs where local procedures have been adopted pursuant to Section 212 of the Taylor Law. In these jurisdictions Section 210.3 and 210.4 of the Taylor Law do not apply and as a result PERB is without jurisdiction in the enforcement of this penalty.

Insofar as the mini-PERBs are concerned, PERB requires that they assert jurisdiction to enforce this penalty. The mini-PERBs, however, are not as well prepared as PERB to enforce this penalty and consequently are not able to do so on a uniform basis. PERB is not in a position under the law to require OCB in New York City to assert such jurisdiction and such jurisdiction is not provided by the local legislation in New York City under which OCB operates.

Under Section 751 of the Judiciary Law the courts are given the power to withdraw the dues checkoff as part of the penalty for contempt of court arising in connection with an illegal strike in New York City and in the jurisdiction of upstate mini-PERBS. The court is in a position to enforce this penalty only in those cases which come before it and in which an injunction has been issued and has been violated. The court tends to use the penalty as a discretionary tool in settling strikes and/or as punishment. Consequently, in the local governments which have taken advantage of the opportunity to establish local procedures under Section 212 of the Taylor Law, this penalty is not administered in the same fashion as in the remainder of the state.

As a matter of principle something can be said in behalf of uniform enforcement. In addition, the prospect of withdrawal of the dues checkoff where a strike occurs provides a very significant deterrent to strikes. Consequently, it is felt that PERB should be given exclusive jurisdiction to determine whether an organization which has engaged in a strike should forfeit its right to the dues checkoff, and if it is determined that forfeiture is in order, the length of time the checkoff privilege shall be withheld. As is the case currently with Subdivision 1 and 2 of Section 210 of the Taylor Law, Subdivision 3 and 4 would be made applicable where local procedures have been adopted. Subdivision 3 relates to the steps followed in applying forfeiture of the checkoff. Subdivision 4 relates to mandating a public report concerning a strike, those involved, and the sanctions imposed, or proceedings pending.
1972 Report at 30. The New York Legislature, however, has never adopted the Committee's recommendation.

15. Footnote two is set out in full below:
We are also concerned that the administrative machinery provided by the Law does not insure a standard of evenhandedness in the imposition of the statutory penalty of forfeiture of dues deduction privileges. This Board lacks jurisdiction to deal with strikes involving public employees of mayoral agencies of the City of New York, and of the other thirteen local governments which currently have a mini-PERB (CSL § 212). Public employee organizations that strike against such agencies may have their dues deduction privileges suspended only by a court, and then only as punishment for contempt of the court's order. Eighteen strikes by such employee organizations have occurred since the advent of the Taylor Law, and in no case has there been any suspension of the dues deduction privileges of the striking employee organization. By contrast, there have been 135 charges filed against employee organizations deemed responsible for strikes that were subject to the jurisdiction of this Board. There were an additional 34 strikes by employees subject to this Board's penalty jurisdiction in which no charge was filed. In these cases, Board Counsel determined that the evidence did not support a charge against any employee organization. This Board has ordered the suspension of dues checkoff privileges in 108 cases, found no penalty warranted in 4, and dismissed or authorized withdrawal of such charges in 19 cases. The remaining cases are pending.

We make no judgment as to whether there should or should not be penalties for strikes of public employees or, indeed, whether such strikes should be legal, as they are in some states. Neither do we make a judgment as to the form or scope that penalties should have. But, it is a matter of simple justice that any statutory penalty provision should be uniform in their application to all employee organizations throughout the State. This inequity is not a basis for imposing a lesser penalty herein for the statute does not give us that discretion; rather, we feel compelled to bring this inequity to the attention of the Legislature for whatever remedy it considers appropriate.

It is apparent from this footnote that the members of PERB, like former Judge Frankel, mistakenly believed that the dues checkoff for-

urged the Legislature, in the interests of uniformity of procedures, to expand the statutory jurisdiction of OCB to cover all public and quasi-public agencies that provide municipal services to the people of the City of New York. *See Report Submitted Pursuant to Chapter 24, Laws of 1969, Designed to Bring New York City's Labor Relations Practices into Substantial Equivalence with the Public Employees' Fair Employment Act* 3–5, Plaintiffs' Exhibit 2 (filed May 21, 1980). Despite such criticism, the State Legislature has on two occasions declined to adopt proposed amendments. *See* Municipal Defendants' Post Trial Memorandum of Law at 11 (filed June 11, 1980).

## DISCUSSION

■ Plaintiffs do not contend that the statutory scheme for enforcement of the forfeiture, as applied, interferes with the exercise of a fundamental right or operates to the particular disadvantage of a suspect classification, which would require strict judicial scrutiny. *See San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Rather, since this challenge to the dues checkoff forfeiture procedures involves issues within the economic sphere, the appropriate standard of review is to determine whether the challenged statutory scheme is " 'rationally related to furthering a legitimate state interest.' " *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979) (quoting *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976));

*Civil Service Employees Association, Inc. v. Helsby,* 439 F.Supp. 1272, 1277 (S.D.N.Y. 1977) ["*CSEA* "]; *Buffalo Teachers Federation, Inc. v. Helsby,* 435 F.Supp. 1098, 1103–04 (S.D.N.Y.1977) ["*Buffalo Teachers*"].

■ In applying this standard, the Court recognizes that the equal protection clause of the Constitution does not deprive the states of all power of classification, *see Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 271, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979), and that the role of the Court is limited. "The primary responsibility for determining the manner in which a particular law will affect society is upon the legislative branch and not the judiciary." *Finkel v. New York City Board of Education,* 474 F.Supp. 468, 471 (E.D.N.Y.1979), aff'd mem., 622 F.2d 573 (2d Cir. 1980). The Supreme Court has articulated the judiciary's role in this regard:

The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted. Thus, we will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.

*Vance v. Bradley, supra,* 440 U.S. at 97, 99 S.Ct. at 943 (footnote omitted).[16]

---

feiture could be imposed only during contempt proceedings in mini-PERB jurisdictions. *See Buffalo Teachers Federation, Inc. v. Helsby,* 435 F.Supp. 1098, 1101 (S.D.N.Y.1977) ["*Buffalo Teachers*"]. In fact, as noted above, it may be imposed by mini-PERBs under their own "substantially equivalent" administrative procedures.

16. Similar sentiments were expressed by Justice Stewart in *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970):

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the

classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

Therefore, plaintiffs must sustain a heavy burden of proof if they are to succeed in this action. *Id.* at 111, 99 S.Ct. at 950; The National Organization for the *Reform of Marijuana Laws v. Bell*, 488 F.Supp. 123, 137 (D.D.C.1980).

■ The State and all its localities obviously have a substantial interest in ensuring that labor relations between public employers and their employees function as smoothly and amicably as possible, to prevent labor impasses that threaten public health and safety. The Taylor Law was designed to foster this paramount interest. Plaintiffs do not dispute that the provisions of section 212 of the Act, which afford public employers the flexibility to devise procedures, "substantially equivalent" to PERB's, that are suited to meet the needs of their particular bargaining relationships rationally further this paramount interest. Moreover, the same legitimate state interest is the basis for the different enforcement procedures available in the three jurisdictions authorized by the Taylor Law—PERB, mini-PERBs and OCB. It is not surprising that this decentralized system often results in varying degrees of enforcement even though the criteria for imposing the dues checkoff penalty is substantially the same in each.[17] Again, whatever difference in enforcement exists under this system is rationally related to furthering improved public labor relations and local control over such relations. *See Buffalo Teachers Opinion, supra; CSEA, supra,* 439 F.Supp. at 1279.

Similarly, plaintiffs are apparently willing to concede that section 212.2 of the Act affords New York City latitude in devising its own regulatory procedures and that the omission of an administrative dues checkoff forfeiture procedure from the NYCCBL rationally furthers the legitimate interest in local control over public labor relations and the paramount interest of encouraging amicable labor relations.[18] As Judge Goettel recognized, there is a rational basis for classifying employees under OCB's jurisdiction differently from public employees throughout the state. *CSEA, supra,* 439 F.Supp. at 1279–80.[19] Therefore, the Court finds that the procedures employed by OCB and the different treatment that has resulted when compared to public employees outside New York City, do not violate the equal protection clause.

Plaintiffs contend, however, that it is irrational for the statutory scheme, as applied, to treat the UFT which is under PERB's jurisdiction, differently from other New York City unions, most of which are under OCB's jurisdiction. The logical conclusion of this argument would be to seek inclusion of the Board under OCB jurisdiction. Plaintiffs, however, have never particularly attacked section 1173–4.0 of the NYCCBL, which forecloses the Board from

---

*McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393.

17. In the *Buffalo Teachers Opinion, supra,* this Court rejects the notion that in imposing the penalty, PERB relies upon a different standard of liability than the courts or mini-PERBs.

18. Even if plaintiffs had not made this concession, the Court has found that the absence of an administrative dues checkoff forfeiture procedure is rationally related to the legitimate interest in local control of public employee labor relations. *See Buffalo Teachers Opinion, supra,* 515 F.Supp. at 225–26.

19. Judge Goettel's conclusion is supported by the following statement of the Joint Legislative Committee:

The provisions in the Taylor Law permitting a local system in New York City reflected legislative recognition that public employee relations for New York City employees had developed more rapidly and in a somewhat different pattern than elsewhere in the state. It apparently was concluded that some degree of flexibility was appropriate in New York City rather than the imposition of a structure which might have disrupted the organizations and relationships developed over a substantial period of time.
1972 Report at 21.

Similarly, the Joint Legislative Committee noted that "[t]he flexibility thus provided to New York City has made it possible for the City to continue, with some important changes, the public employee relations system which predated the Taylor Law." *Id.* at 16. The pre-Taylor Law system was far more complex than others that had developed throughout the state. *See id.* at 7–9, 21–25.

opting for OCB coverage for its pedagogical and paraprofessional employees, and thereby creates the challenged classification, since plaintiffs do not seek OCB jurisdiction as a remedy in this action. Nonetheless, the Court must determine whether this classification, which distinguishes the UFT from the unions under OCB, is rationally related to furthering a legitimate governmental interest.

Defendants contend that "[t]he intricate web of legal, fiscal and administrative relationships" between the Board and the State provides a rational basis for the legislative decision to continue the Board in PERB's jurisdiction along with other state employees. In particular, defendants point out that (1) the Board, which is considered a separate public employer under the Taylor Law, is part of a statewide system governed by the New York Education Law, (2) a large portion of its funding derives from the State and federal government, and (3) the State licenses pedagogical employees of the Board, sets educational standards and monitors statewide testing. *See* Municipal Defendants' Post Trial Memorandum of Law at 23–24 (filed June 11, 1980). Plaintiffs respond that other public employers opting for OCB jurisdiction, such as the New York City Health and Hospitals Corporation, are also regulated by the State and receive State and federal funds, and yet neither the City Council nor the Legislature has rescinded their ability to opt for OCB jurisdiction. Furthermore, plaintiffs contend that the statutory scheme's penalty provisions under which the UFT has sustained harsher penalties than those sustained by unions under OCB jurisdiction, are not rationally related to furthering the legitimate state interest in fostering amicable public employee labor relationships, since such uneven treatment among New York City unions causes unrest and resentment.

In assessing these arguments, it must be remembered that the State Legislature intended to afford significant flexibility to New York City in creating procedures to accommodate its more complex labor relations, which necessarily includes the flexibility to make decisions concerning the definition of OCB's jurisdiction. The Legislature recognized that flexibility is necessary to prevent disruption of the varied negotiating relationships that developed in New York City prior to the enactment of the Taylor Law. Therefore, it is overly simplistic for plaintiffs to contend that, despite the pronounced interest in fostering flexibility and the notion of home rule for individual public employers, uniform regulatory procedures, uniformly applied, will best serve the negotiating relationship of all public employers and employees within the City of New York. Moreover, the regulatory scheme of PERB and OCB differ in respects other than just the frequency with which the dues checkoff forfeiture is imposed. The effect of such differences, such as OCB's binding arbitration procedures, on the particular negotiating relationship was no doubt a consideration. Based upon the evidence in the record, it cannot be said that plaintiffs have sustained their burden of proving that the classification challenged is irrational. There is absolutely no evidence that the decision to exclude pedagogical and paraprofessional employees of the Board from OCB jurisdiction was the product of antipathy toward the UFT or anything more than a policy choice made by a legislative body vested with the discretion to make such choices. To the contrary, the degree of the Board's financial and regulatory relationship with the State does distinguish it from many other municipal employers. Furthermore, the decision requiring the Board's teaching employees to remain under PERB's jurisdiction is rationally related to continuing the Board's labor relationship with the UFT in an undisruptive fashion. Therefore, the Court concludes that the classification furthers the legitimate interest in local control of public labor relations. Whether the present procedures employed by OCB for imposing the dues checkoff forfeiture conform to the "substantial equivalence" requirements of the Taylor Law, however, is not a question for this Court to resolve.

As in *Buffalo Teachers Opinion, supra,* 515 F.Supp. at 215, also decided today, plaintiffs' arguments plainly question the wisdom of the present statutory scheme and whether it truly accomplishes its goal of ensuring amicable public labor relations. As has often been recognized, however, legislative classifications that have a rational basis but which imperfectly effectuate the State's goals or in practice result in some inequality are not unconstitutional. While plaintiffs would prefer that the dues forfeiture be enforced uniformly throughout the State and City of New York, persuasive arguments based upon interests of local control could be voiced in opposition. In the end, the choice must be made by the State Legislature which is no doubt keenly aware of the criticism of the current statutory scheme. *See Vance v. Bradley, supra,* 440 U.S. at 108, 99 S.Ct. at 948–49; *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); *Finkel v. New York City Board of Education, supra,* 474 F.Supp. at 471–72. In sum, since the Court finds that the different treatment accorded the UFT under the statutory scheme for the dues checkoff forfeiture is rationally related to furthering harmonious public labor relations and the legitimate "state interest in allowing local governments to develop their own machinery to supervise their own public employees," *CSEA, supra,* 439 F.Supp. at 1280, the application of the challenged statutory scheme to the UFT does not violate the equal protection clause of the Constitution.

### CONCLUSION

In accordance with the foregoing, since plaintiffs have not proved the claim contained in their complaint, the complaint is dismissed.

These are the Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

Submit Judgment on Notice.

SO ORDERED.

### MEMORANDUM AND ORDER

Plaintiffs' motion for reargument and reconsideration of the Court's Opinion (filed Mar. 18, 1981) is granted. Upon reconsideration, the Court adheres to its original decision.

Upon reargument, plaintiffs seek to persuade the Court to amend its findings of fact and conclusions of law to eliminate certain alleged inaccuracies in the Court's March 18, 1981 Opinion. The Court has carefully reviewed the arguments advanced by plaintiffs and concludes that none merit amendment of the Court's findings of fact and conclusions of law on the merits. Upon review of its Opinion, however, the Court hereby makes the following revisions:

1. The last sentence of Footnote One, "Plaintiffs have also abandoned their demand for declaratory relief," is hereby deleted.

2. Footnote Three is hereby amended to read:

Other New York City-based public employers that are under PERB's jurisdiction include the New York City Transit Authority, the Board of Higher Education and the Triborough Bridge and Tunnel Authority. *See* Municipal Defendants' Post Trial Memorandum of Law at 14 (filed June 11, 1980).

In all other respects, the Court adheres to the findings of fact and conclusions of law contained in its March 18, 1981 Opinion.

Submit Judgment on Notice forthwith.

SO ORDERED.