OPINION OF THE COURT
Louis B. York, J.
In this CPLR article 78 proceeding, petitioners the City of New York (the City) and Rudolph Giuliani, the Mayor of the City, seek an order annulling decision number 4-97 of corespondent the Board of Certification of the City of New York. That decision states that certain City employees working as Project Planners are subject to the collective bargaining requirements of the Civil Service Law. The Board of Certification and its corespondent, District Council 37, American Federation of State, County and Municipal Employees, AFL-CIO (DC 37), have each opposed the petition. For the following reasons, the court dismisses the petition.
BACKGROUND
1. State and Local Statutory Scheme
The Public Employees’ Fair Employment Act, commonly referred to as “the Taylor Law”, appears at article 14 of the *133 Civil Service Law. The Taylor Law was promulgated “to promote harmonious and cooperative relationships between government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government.” (Civil Service Law § 200; see, Shanker v Helsby, 515 F Supp 871, 874 [SD NY 1981].) Among other things, the law attempts to effectuate this policy by (1) giving public employees the right to form unions and (2) requiring both State and local governments “ To negotiate with, and enter into written agreements with [certified] employee organizations representing public employees’.” (Supra, at 874.) The Taylor Law applies to “public employees”, who are defined to include “any person holding a position by appointment or employment in the service of a public employer, except * * * [State court Judges, members of the State militia] and persons who may reasonably be designated from time to time as managerial or confidential upon application of the public employer to the appropriate board in accordance with [the established] procedures” (Civil Service Law § 201 [7] [a]).
The Legislature also has recognized the benefit of decentralizing the administration of labor relations involving the public sector. (Matter of Levitt v Board of Collective Bargaining, 79 NY2d 120, 126 [1992].) Accordingly, section 212 of the Civil Service Law allows local governments to adopt provisions and procedures “substantially equivalent to” those contained in the State collective bargaining laws. (Civil Service Law § 212 [1].) Unlike most jurisdictions, in which the local laws must be approved before going into effect, New York City’s procedures are deemed effective unless and until a court of competent jurisdiction finds that they are not substantially equivalent to the procedures established in the Civil Service Law. (Supra; see, Shanker v Helsby, 515 F Supp, supra, at 876.)
Utilizing its power under Civil Service Law § 212, the City has promulgated its own regulations governing the collective bargaining of its employees. (Administrative Code of City of NY §§ 12-301 — 12-316 [the New York City Collective Bargaining Law, hereinafter NYCCBL].) The regulations apply to municipal agencies, which include “an administration, department, division, bureau, office, board, or commission, or other agency of the city established under the charter or any other law, the head of which has appointive powers, and whose employees are paid in whole or in part from the city treasury” *134 (Administrative Code § 12-303 [d]).[1] Consistent with the Civil Service Law, the Administrative Code states that “managerial” and “confidential” employees shall not be subject to the Civil Service Law and included in collective bargaining. Those employees encompassed by section 12-305, on the other hand, engage in negotiations as outlined in section 12-311 of the Administrative Code.
Under the Taylor Law, the Public Employment Relations Board (PERB) resolves disputes between the public employees and their employers, including disputes over the eligibility of classes of employees for collective bargaining. (Civil Service Law § 200 [d]; see, Shanker v Helsby, 515 F Supp, supra, at 874.) The New York City Charter establishes the analogous Office of Collective Bargaining (OCB). (NY City Charter § 1170.) OCB consists of (1) a seven-member Board of Collective Bargaining and (2) the Board of Certification of the City of New York (the Board), which is one of the respondents in this proceeding. (NY City Charter §§1171, 1172.) Among other things, the Board decides which employees are exempt from collective bargaining based on their status as managerial or confidential. (See, Administrative Code § 12-309 [b].)
2. Factual Background
DC 37 is the representative of employees of the City in the collective bargaining process. In December of 1984, DC 37 filed a petition to represent employees holding the title of Project Planners. The Project Planners include Assistant Project Planners, Project Planners and Senior Project Planners, all of whom work in the Mayor’s office; Assistant Project Planners in the Office of the Staten Island Borough President; and Project Planners and Senior Project Planners in the Office of the Criminal Justice Coordinator.[2]
The City opposed the application on the ground that Project Planners should not be unionized because they constitute managerial and/or confidential employees under section 12-305 of the Administrative Code. In 1986, the Board ordered a hearing to determine whether the workers holding these titles were managerial and/or confidential employees.
During the Koch and Dinkins administrations, DC 37 and the City engaged in settlement negotiations. When the parties *135 finally determined that a settlement was impossible, the Board scheduled hearings. It conducted these hearings on August 14, 1992; February 1, June 10, June 11, July 13, July 14, July 21, September 9, September 22, and October 29, 1993; January 1, February 2, March 7, March 24, April 26, June 1, June 3, and June 8, 1995. On July 14, 1997, the Board issued the decision that petitioners currently challenge.
The Board initially determined that, contrary to the City’s contention, it had the jurisdiction to hear the matter. The Board rejected the City’s argument that the New York City Charter, which grants the Mayor broad powers to organize and reorganize his office, outweighs the New York City Collective Bargaining Law in the case of an alleged conflict. According to the Board, the City’s argument apparently rested on the fact that the Charter was enacted by referendum. However, the Board noted that any existing conflict is not simply one between two local laws. Instead, the Collective Bargaining Law is based on the State Civil Service Law, commonly known as the Taylor Law. In the event of conflict, the Board concluded, the Taylor Law, as a. general State law, would preempt the inconsistent provisions of the local Charter. Furthermore, the Board found that NYCCBL (Administrative Code) § 12-303 (d) makes it explicit that the Collective Bargaining Law applies to the City and its agencies, including the Mayor’s office. Finally, the Board found that public policy did not support a contrary decision. In so doing, it rejected the City’s argument that by exerting its jurisdiction the Board would be interfering with the City’s right to run the Mayor’s office.
Next, the Board examined the Project Planner positions at issue. It stated: “While, in general, it is this Board’s policy not to split titles by finding some employees managerial and others eligible for bargaining, an exception to the general rule will be made where it is justified by compelling evidence * * * In the instant matter the fact that the Project Planners are employed in distinct offices and perform work unique to each office, justifies our consideration of splitting the Project Planner title series.” (District Council 37 v City of New York, Off of Collective Bargaining, Bd of Certification, July 14, 1997, decision No. 4-97, at 3 [hereinafter referred to as the Decision and cited as Dec.].)[3] Accordingly, it considered each office of Project Planners separately. The Board did not distinguish between Assistant Project Planners, Project Planners and Senior Project *136 Planners within each office, however, deciding that there were no material, relevant differences among the various levels.
Based on its detailed analysis, the Board held that (1) Project Planners employed in the Mayor’s Office of HIV Health and Human Services Planning Council and in the Office of the Coordinator for Criminal Justice are managerial and exempt from collective bargaining; and (2) all other Project Planners included in the petition — that is, Assistant Project Planner (Mayor’s Office) TC 06008, Project Planner (Mayor’s Office) TC 05481, Senior Project Planner (Mayor’s Office) TC 05482, Assistant Project Planner (Office of the Borough President, Staten Island) TC 06022, and Project Planner (Office of the Borough President, Staten Island) TC 06023 — are neither managerial nor confidential and thus are eligible for collective bargaining.
Following the issuance of the Decision, the City and the Mayor commenced this article 78 proceeding. First, petitioners reassert their argument that the Board improperly exerted jurisdiction over the employees in the Mayor’s office, as all of these employees should be deemed exempt from collective bargaining. Second, petitioners urge this court to find the Decision arbitrary and capricious because the Board has previously found that the Mayor’s employees, including Project Planners, should not be considered for collective bargaining. Third, according to petitioners, the Board’s decision to split its analysis of the Project Planners, finding some employees managerial and others eligible for collective bargaining, was arbitrary and capricious because it was not justified by a compelling reason. Because petitioners’ arguments are legal rather than factual, and thus not based on the 18 days of hearings, the parties agreed that review by a trial rather than appellate court is proper.
ANALYSIS
As the agency charged with implementing the Administrative Code and the Taylor Law (see, Matter of City of New York v Plumbers Local Union No. 1, 204 AD2d 183, 184 [1st Dept 1994], Iv denied 85 NY2d 803 [1995]), the Board is “presumed to have developed an expertise and judgment that requires us to accept its construction if not unreasonable.” (Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd., 48 NY2d 398, 404 [1979] [evaluating PERB determination]; accord, Nassau Community Coll. Fedn. of Teachers v Nassau County Pub. Empl. Relations Bd., 173 AD2d 529 [2d Dept 1991].) The court therefore shall uphold the Board’s deci *137 sion unless it was affected by an error of law, or was arbitrary, capricious or an abuse of discretion. {See, Matter of City of New York v Plumbers Local Union No. 1, 204 AD2d 183, 184-185 [1st Dept 1994], Iv denied 85 NY2d 803 [1995]; Nassau Community Coll. Fedn. of Teachers v Nassau County Pub. Empl. Relations Bd., 173 AD2d 529.)
1. Jurisdiction of the Board
Petitioners first allege that the Board should not have exerted jurisdiction over the employees of the Mayor’s office. By even examining the issue and rendering a decision, according to the City, the Board has acted inconsistently with section 8 (f) of the City Charter — which, according to petitioners, allows the Mayor to create and abolish divisions and positions within his office without consideration of the collective bargaining laws.
As the Board noted in its decision, this contention is at odds with the clear language of both the Taylor Law and the City’s own Collective Bargaining Law. Section 12-303 (d) of the Administrative Code applies to “municipal agencies”, and the provision broadly defines this phrase. Mayoral employees are not exempted from section 12-303 (d); therefore, it was rational for the Board to determine they were not exempted from the law. (Cf., Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 135 Misc 2d 1088, 1092 [Sup Ct, Albany County 1986] [determining that police officer is public employee under Taylor Law because position is not specifically exempted from definition], affd 132 AD2d 242 [3d Dept 1987], Iv denied 71 NY2d 803 [1988].)
Furthermore, the Board has the power to decide who is a public employee under the collective bargaining laws. (Cf., Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 135 Misc 2d, supra, at 1091 [regarding PERB’s power under Taylor Law].) In addition, the Board has the “jurisdiction to determine managerial and confidential status” (Matter of Civil Serv. Tech. Guild v Anderson, 79 AD2d 541 [1st Dept 1980], revd on other grounds 55 NY2d 618 [1981]). Thus, the Board has jurisdiction to determine whether mayoral employees fit into these exceptions, and to do so on a category-by-category basis. A ruling to the contrary would conflict with long-standing precedent — and, as respondents suggest, would carve out a new exception to the general presumption in favor of collective bargaining. (See, Assistant Deputy Wardens Assn. v City of New York, Sept. 19, 1995, Dec. No. 11-95, at 21 [not *138 ing existence of this presumption].) Notably, in support of some of their other arguments, petitioners point to prior Board decisions evaluating the status of various mayoral employees. The Board made all of these decisions after fact-finding hearings, and apparently without any objection based on the Board’s jurisdiction to review the case.
Petitioners’ additional arguments are not sufficient to justify the ruling they seek. As petitioners state, the Mayor’s powers are extremely broad. Under section 6 (b) of the City Charter, he “may remove from office any public officer holding office by appointment from a mayor of the city.” Significantly, he also has the ability to “create or abolish bureaus, divisions or positions within the executive office of the mayor as he or she may deem necessary to fulfill mayoral duties” and to “withdraw from any member of said office, specified functions, powers and duties” (NY City Charter § 8 [f]). Petitioners express their concern that, if the Mayor’s employees are not considered managerial and/or confidential on an automatic basis, this will infringe upon the Mayor’s delegated powers. For example, a decision to decrease the number of Project Planners might become the subject of Board scrutiny. In addition, a decision to replace a former mayor’s staff with new employees might also be challenged under the collective bargaining laws.
As the Board points out, however, petitioners are attempting to create an issue regarding conflict where no conflict exists. For both section 6 (b) and section 8 expressly state that the Mayor’s power exists only to the extent not “otherwise provided by law.” Thus, it is implicit that the Mayor’s powers are subject to the constraints, if any, contained in the Taylor Law and other State laws. The Charter is not intended to override these other provisions. This is further underscored by the statutory management rights clause in section 12-307 (b) of the New York City Collective Bargaining Law (Administrative Code), which states, in pertinent part: “It is the right of the city * * * to determine the standards of * * * selection for employment; direct its employees; take disciplinary action; relieve its employees from duty because of lack of work or for other legitimate reasons * * * determine the content of job classifications * * * and exercise complete control and discretion over its organization * * * Decisions * * * on those matters are not within the scope of collective bargaining, but * * * questions concerning the practical impact that decisions on the above matters have on employees, such as questions of workload or manning, are within the scope of collective bargaining.” (Emphasis supplied.)
*139 In addition, there has always been the assumption that all positions in Mayors’ offices are subject to collective bargaining if neither managerial nor confidential; and PERB and the local Boards have evaluated the issue accordingly. (See, e.g., Matter of Civil Serv. Tech. Guild, 26 PERB ^[ 4049 [1993].) Recognition of this fact has not prevented the courts from respecting and enforcing a mayor’s broad rights under local laws. Fucito v Vallone (166 Misc 2d 785, 787 [Sup Ct, NY County 1995]), for example, upheld the Mayor’s right under section 11 of the Charter to transfer functions from one agency to another; to create and eliminate agencies; and to consolidate or merge two or more agencies. Accordingly, in that action, the Supreme Court dismissed a challenge to a New York City law providing for the consolidation of the Sheriffs Department within the Department of Finance. (See also, Prospect v Cohalan, 65 NY2d 867, 874 [1985] [most discretionary, lawful acts of executive branch are beyond judicial review].)
Moreover, the Board argues that it has recognized and protected the City’s right under section 12-307 (b) to retain control of its operations. In Oberhauser v New York City Dept. of Envtl. Protection (Apr. 21, 1994, Dec. No. B-8-94, at 13), for example, the Board rejected the contention that the Union exercises control over the City’s hiring practices — declaring, instead, that the Collective Bargaining Law “gives the City the unilateral right to assign and direct its employees.” (See also, New York State Nurses Assn. v New York City Health & Hosps. Corp., Sept. 22, 1993, Dec. No. B-37-93, at 7 [granting petition, but recognizing municipal employer’s “broad managerial authority to direct employees * * * implement adjusted work assignments or schedules unilaterally as it deems necessary”].) That the municipality does not always win these cases does not diminish these rights; instead, it shows that they exist but must be balanced against its duties as an employer to negotiate in good faith and comply with other existing laws. These responsibilities are not so cumbersome that the Mayor’s office should be entitled to an unlegislated exemption from its statutory requirements under the Taylor Law.
2. Inconsistency with Prior Decisions
Petitioners state that the Decision is also arbitrary and capricious because the Board has previously found that the Mayor’s employees, including Project Planners, should not be considered for collective bargaining. Thus, according to petitioners, this latest decision is inconsistent with the Board’s *140 own precedent. In support of their position, petitioners annex several decisions in which the Board found that certain mayoral departments should be wholly excluded from collective bargaining. However, these cases do not support petitioners’ argument. For one thing, even when the Board found that certain mayoral employees were confidential and/or managerial, it still exerted the jurisdiction to make the determination. (See, e.g., City of New York v District Council 37, Mar. 10, 1976, Dec. No. 11-76.) For another thing, the Board did not always find that all of the mayoral employees it evaluated were exempt from collective bargaining. (See, e.g., City of New York v District Council 37, June 13, 1984, Dec. No. 7-84.) For a third, petitioners have not submitted any Board decisions which make a conclusive finding with respect to Project Planners; thus, the current decision is not inconsistent with Board precedent. For a fourth, even if there had been a prior inconsistent finding, the Board has the power to change its ruling based on new circumstances, a fuller record or a change in the law. (Cf., Copiague Union Free School Dist. v New York State Pub. Empl. Relations Bd., 55 AD2d 596, 597 [2d Dept 1976].) Because the decision is not inconsistent with Board precedent, this court does not consider whether a basis for deviation would have existed in these circumstances.
3. Decision to Split Project Planner Amalysis
Next, petitioners challenge the Board’s decision to find some Project Planners managerial and others eligible for collective bargaining. By the Board’s concession, there must be a compelling reason to justify splitting the analysis of a class of employees in this fashion. Petitioners state that there was no compelling reason and therefore the determination must be declared invalid. Respondents point out that in other circumstances the Board has found compelling circumstances; and that here the finding was amply supported by the evidence before the Board.
The court is especially deferential to this aspect of the determination, which the Board based on “compelling evidence” (see, Dec., at 32, supra) thus triggering the more deferential standard of review applicable to substantial evidence questions. (See, CPLR 7803 [4].) In addition, the Board has promulgated its own standards relating to the issue of whether to split the analysis in these circumstances. In Matter of Civil Serv. Tech. Guild v Anderson (55 NY2d 618 [1981], supra [adopting dissenting mem at 79 AD2d 541, 542-545 (1st Dept 1980)]), the Court of Appeals approved an earlier Board determination, in *141 which the Board relied on its own guidelines, culled from its expertise and its reasonable interpretation of the statute. “It is not unusual for an administrative agency to develop guidelines or criteria to help govern” its determinations. (Matter of Civil Serv. Tech. Guild v Anderson, 79 AD2d 541, 544, n [1st Dept 1980] [Kupferman, J., dissenting], revd on dissenting mem 55 NY2d 618 [1981].) Similarly, where the Board is not otherwise overstepping its authority, judicial deference to its reasoning, based on its understanding of past Board decisions, is appropriate.
Based on the above, this court finds that the decision to split the analysis is a rational one and must be upheld. The decision the Board issued is thoughtful and well reasoned; and, it differentiates in numerous ways among the various classes of Project Planners. The many and relevant distinctions it draws — including its ultimate determination to reach different conclusions regarding the status of various Project Planners— further support its determination to split its analysis.
CONCLUSION
For all of these reasons, it is ordered that the petition is dismissed.

. Section 12-303 (g) contains exceptions to this provision, which are not relevant here.

. In August of 1985, another organization, Communication Workers of America, Local 1180, also applied to represent these employees. Subsequently, however, this organization withdrew its petition.

. The court will cite other Board decisions merely by citing to their docket number — e.g., Dec. No. 4-97.